## FIELD AND FIELD v. RUNK.

1. G. and R., each owning a crop of corn in severalty, commenced negotiating with a miller for the sale of their crops jointly. At a subsequent time G., alone, completed the bargain for the sale of both crops, which R., by subsequent admissions to third persons recognized; this is a joint bargain, and this proof will sustain a count on a joint bargain.

2. If corn be sold at a mill to the miller, to be delivered at a certain time, and is in part delivered at the mill, this is sufficient to authorize the jury to infer that the delivery was to be at the buyer's mill, although there be no express proof of any place of delivery being mentioned.

3. When a joint contract is proved by two parties, to sell and deliver corn owned by them in severalty, and one of them delivers part of his parcel, this is a sufficient part delivery to comply with the statute of frauds.

On writ of error to Somerset Circuit Court.

This case was argued, by *Ransom* and *G. H. Brown*, for plaintiffs in error, and *Vroom*, for defendant in error, before the CHIEF JUSTICE and Justices NEVIUS and OGDEN.

The facts of the case distinctly appear in the opinion of the court, delivered by Justice NEVIUS, in which the CHIEF JUSTICE and Justice OGDEN concurred.

NEVIUS, J. The defendant in error brought this action in the court below against the plaintiffs in error, for a breach of contract, in not delivering a quantity of corn sold by them. The declaration contains two counts. The first charges that the defendants, on or about the 20th January, 1847, sold to the plaintiff 800 bushels of white corn, at 62½ cents per bushel, and 120 bushels of yellow corn, at 60 cents per bushel, to be delivered at the plaintiff's mills in the month of March following, to be paid for on delivery; and which the plaintiff agreed to accept and receive, and pay for, when delivered, at the prices aforesaid. That the defendants neglected and refused to deliver, &c., although he, the plaintiff, was ready and willing to receive and pay for, &c.

The second count charges the like contract, but for 800 bushels of white corn only, and damages are claimed for the breach of these contracts.

The first error assigned for the reversal of the judgment, which was for the plaintiff below, is that the contract proved did not correspond with that laid in the declaration, and the variance is said to consist in this, that the proof on the trial did not show either the time or place when and where the corn was to be delivered, nor did it establish a joint contract by the defendants, as set forth in the declaration. It was upon this ground that a motion was made, on the trial, to nonsuit the plaintiff, which was overruled, and a bill of exceptions prayed and sealed. To determine whether this error is sustained by the facts, it becomes necessary to examine the evidence given on the part of the plaintiff with some particularity. And the first and most important question is, did the plaintiff prove a joint contract by the defendants? George Runk, the first witness, testified that the plaintiff was a miller, engaged in the business of buying grain, and manufacturing it into flour, at his mills at Branchburg, in Somerset county. That, on the 15th of January, 1847, the defendants came together to the plaintiff's mills, and said they wanted to engage to him their corn, to-wit, 800 bushels of white, and 120 bushels of yellow corn, for 62½ cents for the former, and 60 cents for the latter, per bushel. The plaintiff offered them their price, if they would keep it till March, and deliver it then. This they declined doing, and the parties then separated without making any contract. He further testifies, that, on the 21st of January, Richard Field again came to the plaintiff's mills, and the plaintiff asked him if he had heard what he, the plaintiff, and Gabriel, the other defendant, had done the day before. He answered he had. The plaintiff thereupon produced his mill book, and read to him the following entry or memorandum : " January 20, 1847, bought of Gabriel Field and Richard Field his father 800 bushels white flour corn, at 62½ cents per bushel, to be delivered in the month of March next." Richard then said that Gabriel had told him he had also engaged 120 bushels of yellow corn, at 60 cents a bushel. The plaintiff replied that he did, but he had forgotten to enter it. He then added to the foregoing memorandum the words " and 120 bushels of yellow corn, at 60 cents per bushel," and read again the whole

entry as amended, and Richard said that was right, he had ordered Gabriel to do so, and to engage his corn with his own. The plaintiff then, at the instance of the defendant, Richard, agreed to permit *them* to bring in the yellow corn when it suited them, and accordingly 98 bushels were delivered, on the last of January or first of February, at the plaintiff's mills, for which the money was paid on delivery.

Another witness testified that, on the 4th of March, 1847, the defendant, Gabriel, told him he had engaged his corn to the plaintiff, but was not going to take it; that he had also engaged his father's, or that his father had engaged his own; both were engaged. He said he would not take the price for it at which it had been engaged; that it was a verbal bargain, and would not stand law; that he had signed no writing, but believed the plaintiff *had booked it.* Other witnesses, as appears by the bill of exceptions, testified to a recognition of a contract, by both the defendants, with the plaintiff for the sale and delivery of corn; but I deem it unimportant to recite their testimony, as it is merely corroborative of that already referred to.

Upon this evidence two questions are very distinctly presented :

1st. Does it prove any contract at all, for the sale and delivery of corn between the plaintiff and either or both of the defendants? And

2d. If there was a contract, was it a joint or several contract by the defendants?

To the first of these questions, it seems to me, but one answer can be given, and that is in the affirmative. We have, in the testimony above recited, a clear acknowledgment, by each of the defendants, that there was a sale to the plaintiff of 920 bushels of corn, to be delivered in March, at a stipulated price. The defendant, Gabriel, said he had engaged his corn to the plaintiff, and also his father's, but would not take the price at which it was engaged, that the bargain was verbal, and not binding. Richard said he had told G. to engage it. Both defendants recognised a verbal contract. Was it a joint contract by them? or was the evidence sufficient to warrant the jury

in finding it a joint contract? I think these questions must also be answered in the affirmative. The plaintiff made an entry in his mill book, kept for that purpose, on the 20th of January, which, although not signed by the parties, and therefore not of itself binding upon the defendants, yet it contains all other requisites to constitute a valid contract and a joint contract. " Bought of G. F. and R. F. 800 bushels of corn, to be delivered, &c., at 62½ cents, and 120 bushels at 60 cents.". Here is a memorandum of a contract of purchase of corn, from both defendants, at a stipulated price, to be delivered at a stated time. The parties, the subject matter, and the terms and conditions, are there expressed. Was there, in truth, such a contract made? Richard Field, the day after, and when the entry was completed by adding the 120 bushels of yellow corn, said it was right; that he had ordered Gabriel to do so, and that Gabriel had informed him that he had made such contract. Gabriel told another witness that he had engaged his corn, and also his father's, but did not mean to take it at the price at which it was engaged; that although the contract had been entered in the plaintiff's books, it was not signed, and therefore not binding. Here we have, then, both defendants acknowledging the contract, as expressed in the memorandum contained in the mill book. Upon this evidence, I think the jury warranted in finding a contract, and a joint contract, by the defendants. Although it appeared in evidence that part of the corn was the property of one, and the other part the property of the other, yet the contract was entire and for the entire quantity, and not for part from one and part from the other. The language of the defendants to the plaintiff, on the 15th of January, was, " We have 920 bushels; we want to engage it; we want such a price; we have more, but will not engage more at present." The defendants were then acting together, negotiating as partners and joint owners, and attempting to sell the whole together. This explained their acts and declarations subsequently made, and when the contract was finally closed. The fact, that they owned the corn in separate quantities, does not vary the case; they had a perfect right to make a joint contract with a third party for the whole, and I think

the plaintiff proved that they did make such contract. If there was no joint contract, there was none at all, and this can hardly be pretended.

The next ground of variance, it is said, is in the time of delivery. It is insisted that the time proved is not the time laid in the declaration. According to the memorandum in the book, the delivery was to be in March, and so the declaration alleges. Although the time for the delivery of the yellow corn is not fixed by direct and express words, yet, by fair construction, it was to be at the same time that the white corn was to be delivered : " 800 bushels of white corn to be delivered in March, also 120 of yellow corn." When to be delivered ? Surely at the same time. But it is said that the latter was actually delivered in February. Be it so, the parties had a right, by mutual agreement, to change the time of delivery, and if they did so, either as to the whole or part, it would not avoid the contract. If the contract was joint, as has, I think, been shown, the agreement of one of the defendants to deliver a part, and actually delivering a part before March, was binding on both, as it may be esteemed the act of both. And as the suit was brought not for that which had been delivered, but for what had not been delivered, I think the time properly stated in the declaration, and proved as laid.

Again, it is alleged that there was no proof that the delivery was to be made at the plaintiff's mills, as stated in the declaration. There is, indeed, no direct proof that the corn was to be delivered there ; but the facts proved abundantly show that such must have been, and in truth was, the understanding of the parties. The plaintiff was a miller ; his business was to buy grain, and manufacture it at his mills ; the bargain was made there ; it was there that grain bought by the plaintiff was usually delivered, and weighed or measured ; a part of the grain bargained for was actually delivered there by one of the defendants ; and the other defendant, when he had resolved to violate the contract, declared he would not *take* it. Take it where? Why, by fair inference, where he had already taken the 98 bushels—to the plaintiff's mills. There can be no reasonable doubt as to the place of delivery contemplated by the

parties to this contract, and, therefore, no demand was necessary, after the expiration of the time fixed for the delivery and before suit brought. If, then, the jury were warranted in finding that the contract was joint, as I think they were, it remains to inquire whether it is a valid and legal contract, and can be enforced in a court of law. The defendants contend that it is void by the statute of frauds, because there was no memorandum of it signed by the parties, nor any part of the goods accepted and received by the buyer, nor any thing given in earnest to bind the bargain, or in part payment.

The fifteenth section of the statute provides " that no contract for the sale of goods for the price of $30 and upwards shall be allowed good, except the buyer shall accept part of the goods so sold, and actually receive the same, or give something in earnest to bind the bargain, or in part payment, or that some note or memorandum in writing of the bargain be made, and signed by the parties to be charged, &c."

In this case there was no note or memorandum in writing signed by the parties; there was nothing given in earnest to bind the bargain, or in part payment. We are, therefore, to inquire whether any part of the property sold was actually accepted and received by the plaintiff, who was the buyer, so as to take the case out of the operation of the statute.

The case shows that, shortly after the contract was entered into, a part of the corn sold, *to wit,* 98 bushels, was delivered by the defendants below, and actually accepted and received by the plaintiff, and a part of the whole purchase money or price paid by him upon such delivery. But it is objected that this was not done at the time the contract was made; and, as it was void in its inception, such delivery afterwards did not render it valid for the whole quantity of 920 bushels. The answer to this objection is, that the quantity delivered was in pursuance of, and in direct reference to the contract, and was in itself a reaffirmance of the contract by the defendants. It can make no difference whether the delivery, acceptance, and receipt were a few hours or a few days after the bargain and sale, if made in pursuance of such sale. A parol sale of goods exceeding $30 in value is good, though no part was accepted

and actually received by the vendee until a few hours after the sale. *Davis* v. *Moore*, 1 *Shepley* 424 ; *Peck* v. *Hall*, 2 *Pick.* 206.

I think the contract a legal and valid one, and that the judgment below ought to be affirmed.

Judgment affirmed.