David E. DANGERFIELD, d/b/a
Dangerfield Potato Company,
Plaintiff/Appellee,

v.

Dean MARKEL, Defendant/Appellant.

Civ. No. 9016.

Supreme Court of North Dakota.

Oct. 10, 1974.
As Amended Nov. 27, 1974.

De Puy, Fair & O'Connor, Ltd., Grafton, for defendant/appellant.

Shaft, Shaft, McConn & Fisher, Grand Forks, for plaintiff/appellee.

JOHNSON, Judge.

David E. Dangerfield is an independent potato buyer, doing business in the potato-growing areas around Grafton, North Dakota. Dean Markel is a farmer who raises potatoes in that area. By a complaint dated February 15, 1973, Dangerfield alleged that Markel had breached a contract for the sale of 25,000 hundredweight of potatoes grown during the 1972 growing season, to be shipped during the 1972–1973 shipping season. It was alleged that Markel had failed to deliver some 15,078 hundredweight of potatoes during respective contract periods. It was further alleged that the market price had increased substantially over the contract price during this period. Dangerfield claimed damages of $48,482, and later amended his complaint to increase his damage claim to $96,675.

Markel filed an answer and counterclaim in which he alleged that Dangerfield failed to provide for delivery of the potatoes and failed to make timely payment for potatoes delivered, thus breaching any agreement. Markel also counterclaimed for breach of contract on the 1971 potato crop. Markel alleged that there was an agreement between the parties for purchase of some 27,000 hundredweight of potatoes, and a subsequent agreement for purchase of an additional 14,000 hundredweight of potatoes from storage. Of this total sum, 25,957 hundredweight was accepted for delivery. Markel claims damages for failure to accept delivery of the balance.

Dangerfield subsequently made a motion for summary judgment and a motion to strike. The motion for summary judgment covered those portions of the counterclaim alleging liability for failure to take delivery of the additional 14,000 hundredweight of potatoes. Dangerfield denied such an agreement but agreed that if any agreement should be found, it would be an unenforceable oral agreement under the Statute of Frauds. The motion was based upon affidavit of the plaintiff, deposition of the defendant, the pleadings and files. The motion to strike related to "that part of the Defendant's Amended Counter Claim identified as paragraph 8 of the Amended Counter Claim," based upon the ground that this was an amendment which could be made only by stipulation of the parties or by leave of court. Paragraph 8 referred to a claim of $50,000 for consequential damages to Markel's business as a result of the failure to make payment for the potatoes from the 1971 crop.

The motions were denied on November 17, 1973, with leave to renew them at the time of trial. The case was set for trial on December 3, 1973, and, at that time, the motions were renewed. The trial judge then denied the motion for summary judgment and granted the motion to strike.

■■ A motion for dismissal of the appeal was filed by Dangerfield on May 21,

1974, upon the ground that the record on appeal was not filed until seventy-five days after the filing of the notice of appeal, rather than forty days as required by Rule 11(a), Rules of Appellate Procedure. It appears that application for extension of time was made to the district court and granted but not within the forty days allotted under Rule 11(d). Under Rule 12(c), Rules of Appellate Procedure, dismissal may be authorized. However, counsel for Markel has submitted compelling personal circumstances in explanation of his neglect and there is no showing of inconvenience, detriment or prejudice to the appellee. The record and briefs have been submitted for hearing on the merits. The argument upon the merits was in due course, set in conjunction with argument upon the motion. The motion, therefore, will be denied and no motion costs assessed in view of the combined hearing.

This case provides some object lessons in the problems of dealing with appeals upon questions which do not involve full and final determination of the merits of the case. The record is inadequate in that we do not have a full transcript of the proceedings, and is conflicting as to the scope and intent of the order granting the motion to strike. While the written motion, as reflected in the record, was limited to one paragraph of the counterclaim covering consequential damages, the order refers to a motion to strike "the said allegations concerning said additional 14,000 cwt. of potatoes from the amended Counter-claim." In addition, the motion for summary judgment on these claims was denied and the basis for such denial is unclear.

Since the parties in their briefs and arguments have accepted the interpretation that the order struck all allegations relating to the additional 14,000 hundredweight of potatoes, we will accept that interpretation for purposes of this decision.

The first question presented is whether this order striking substantive portions of a counterclaim is an appealable order. Under subsection 5 of Section 28–27–02, N.D.C.C., appealable orders include:

"5. An order which involves the merits of an action or some part thereof;"

Cases applying this section have held that an order striking an affirmative defense not otherwise provable under the remaining allegations of the answer is an appealable order. Boettner v. Twin City Construction Company, 214 N.W.2d 635 (N.D.1974); La Duke v. E. W. Wylie Co., 77 N.D. 592, 44 N.W.2d 204 (1950). Federal decisions to the contrary are based upon provisions which differ from . Section 28–27–02, N.D.C.C. United States Sugar Corp. v. Atlantic Coast Line R. Co., 196 F.2d 1015 (5th Cir. 1952); Libbey-Owens-Ford Glass Co. v. Sylvania Industrial Corporation, 154 F.2d 814 (2d Cir. 1946); Thompson v. United States, 250 F.2d 43 (4th Cir. 1957).

Under another line of cases, relying upon Rule 54(b) of the Rules of Civil Procedure, orders denying or granting summary judgment have been held not appealable. Perdue v. Knudson, 154 N.W.2d 908 (N.D. 1967); Gebeke v. Arthur Mercantile Company, 138 N.W.2d 796 (N.D.1965). The appeal must be from the judgment itself.

Dangerfield urges that this is in substance an order for summary judgment and not appealable. This argument might be more persuasive if the court had not specifically denied an order for summary judgment on these same matters. Markel urges that this order comes within that category of orders to strike previously held appealable. For purposes of this appeal, we will treat the order as such. Since we feel that this was an inappropriate use of the motion to strike, the holding here is limited in its application to future cases.

The motion to strike, under the terms of Rule 12(f) of the Rules of Civil Procedure, is the remedy for eliminating redundant, immaterial, impertinent or scandalous matter in the pleading. By specific amendment in 1948, the federal rule, and

subsequently our rule as well, authorized its use for objecting to an insufficient defense. This form of motion was not designed as a method of dismissing all or part of a complaint or counterclaim. Wright & Miller, Federal Practice and Procedure, § 1380, at 782. Motions made under Rule 12(b)(6) and Rule 12(c), Rules of Civil Procedure, are especially authorized to be treated as motions for summary judgment, where supporting evidence, by affidavit, deposition or otherwise, is offered. Rule 12(f) motions have no such authority, but a good case can be made that this is merely an inadvertent omission from the rule.[1]

■ While this court is prepared to look at the substance of the motion and not merely its technical title, we cannot find basis for treating this motion as other than a motion to strike under Rule 12(f). The summary judgment motion on the same matters was denied. We hold, therefore, that the motion to strike was erroneously utilized as a basis for eliminating substantive portions of the defendant's counterclaim.

■ In returning this case to the lower court for trial, some observations on the application of the Statute of Frauds appear in order. Under Section 41–02–08, N.D. C.C.:

"Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing."

Subsection 3(b) of the statute contains an exception which is in issue here. An oral contract for the sale of goods in excess of five hundred dollars may be enforceable "if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted."

It is to be noted that this statute speaks in terms of rendering the contract "not enforceable" rather than "void" or "voidable." In addition, other provisions of the Uniform Commercial Code, as adopted in this state, do not contain these exceptions to nonenforceability of an oral contract. The contract for sale of goods is treated differently than the sale of other personal property (Section 41–01–16, N.D.C.C.) or securities (Section 41–08–35, N.D.C.C.) or security agreements (Section 41–09–16, N.D. C.C.). The official comment to this section of the Uniform Commercial Code provides

---

1. "If matters outside the pleadings were freely presented and considered, motions under Rule 12(f), especially those testing the legal sufficiency of a defense, might be transformed into motions testing the factual or evidentiary, as well as the legal, basis for the challenged pleading and would serve much the same function as a motion for summary judgment. Even though Rule 12(f) probably was not intended to serve this function, it is difficult to distinguish the role of the motion to strike an insufficient defense from that of the Rule 12(b)(6) and Rule 12(c) motions in terms of the desirability of permitting their conversion into summary judgment motions. Consequently, the absence of a conversion provision in Rule 12(f) covering challenges to insufficient defenses makes little sense and probably is the result of a happenstance of timing—the conversion provisions in Rules 12(b)(6) and 12(c) were inserted at the same time the motion to strike an insufficient defense was formally recognized and the possibility of extending the practice to the latter context may have been overlooked. Thus, it is not surprising that some courts, when faced with affidavits on a Rule 12(f) motion to strike a defense have treated the motion to strike as one for partial summary judgment." Wright & Miller, Federal Practice and Procedure, § 1380, at 789.

some additional explanation of the intent with respect to this exception:

"If the making of a contract is admitted in court, either in a written pleading, by stipulation or by oral statement before the court, no additional writing is necessary for protection against fraud. Under this section it is no longer possible to admit the contract in court and still treat the statute as a defense. However, the contract is not thus conclusively established. The admission so made against the party is itself evidential against him of the truth of the facts so admitted and of nothing more; as against the other party, it is not evidential at all." Comment to Section 2–201, Uniform Commercial Code.

▬▬ The exception contemplates that for this type of agreement, involving sale of goods, a less strict standard be applied. The other party to the purported agreement may be required to admit or deny the oral agreement. If it is legally enforced it must be on the testimony of the party against whom it is sought to be enforced. In applying a similar statute the Iowa Supreme Court has provided some appropriate guidelines:

"[I]f the plaintiff relies upon the testimony of the defendant to establish the alleged oral contract, he must prove the same thereby, and cannot contradict or supplement the same by the testimony of other witnesses. In such case the testimony of the adverse party must be sufficient in itself." Quaker Oats Co. v. Kidman, 189 Iowa 906, 179 N.W. 128, 129 (1920).

The Iowa court has also noted that the defendant need not admit there is a contract or admit the contract in the exact terms claimed by the plaintiff. While the defendant's testimony on this point may not be added to or contradicted by other evidence, the testimony is subject to the ordinary rules of proof. If a fair consideration of his testimony, and its implications under the circumstances established by the record, establishes the claimed agreement, it will be enforced. McCutchan v. Iowa State Bank of Fort Madison, 232 Iowa 550, 5 N.W.2d 813 (1942); Olsen v. Peregoy & Moore Co., 182 Iowa 889, 165 N.W. 202 (1917).

▬▬ Another alternative to the strict application of the Statute of Frauds in this case is the doctrine of equitable estoppel. Markel has urged that Dangerfield may be estopped to deny the existence of the oral agreement. Where one party, in reliance on the other's representation or conduct, changes his position or otherwise suffers an unjust or unconscionable injury or loss, or where one party has accepted performance or benefits to the detriment of the other, the doctrine may be applied. See 37 C.J.S. Frauds, Statute of § 246; Restatement of Contracts, § 90; 28 Am.Jur.2d Estoppel and Waiver, § 25 et seq. However, the statute must not render the contract void and the contract itself must be established by competent evidence. In this case the statute would not be a bar.

▬▬ Markel claims also the right to introduce evidence of usage or course of dealings within the trade to substantiate his oral agreement. See Sections 41–01–11(3), 41–01–15, 41–01–02(2), N.D.C.C. Apparently, he contends that much of these dealings within the potato trade are handled on an oral or telephone commitment. We are not persuaded that these portions of the commercial code relating to a course of dealings or trade usage were intended to be applied in a manner to defeat its Statute of Frauds' requirements. See subsection 4, Comment to Section 1–205, U.C.C. At best, evidence of a custom or usage in the trade may be used to explain ambiguous portions of an agreement. While regularly observed practices in a trade may explain what the parties intended, a consistent failure to utilize written agreements does not change the law.

The order is vacated and the case returned for additional proceedings consistent with this opinion.

ERICKSTAD, C. J., and VOGEL, KNUDSON and PAULSON, JJ., concur.