# LEWIS *v.* HUGHES

[No. 11, September Term, 1975.]

*Decided October 29, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, ELDRIDGE and O'DONNELL, JJ.

*George W. Shadoan,* with whom were *Shadoan & Mack* on the brief, for appellant.

*Carl Harrison Lehmann* for appellee.

DIGGES, J., delivered the opinion of the Court.

Whether the writing requirement of the Statute of Frauds contained in Title Two of the Uniform Commercial Code, Md. Code Ann. (1975), Commercial Law Article, § 2-201, prevents the enforcement of an oral contract for the sale of a mobile home is the question we must settle in this case. Judge Robert E. Clapp, Jr., sitting without a jury in the Circuit Court for Montgomery County, resolved this issue by deciding that under § 2-201 (1) the contract, between Bettie Lewis, the plaintiff-appellant, and Dr. Herbert H. Hughes, the defendant-appellee, was not enforceable because the writing evidencing the contract, though signed by an agent of the appellee, was inadequately subscribed inasmuch as the agent did not have authority to execute such a memorandum on behalf of the doctor. Without determining whether the circuit court was correct in holding that this agreement cannot pass muster under the signature requirement of § 2-201 (1), we conclude that it can be enforced under § 2-201 (3) (b) since Dr. Hughes admitted in his testimony at trial that the contract was made. Consequently we will reverse and remand the case for an assessment of damages.

The chronicle of this case begins in the spring of 1973 when the appellant agreed to sell her 1967 Hillcrest mobile home to Phillip and Joyce Walters subject to the condition that Midway Mobile Home Park, located in Laurel, Maryland, permit the purchasers to rent the space on which the house trailer was then situated. Mrs. Lewis immediately sought the consent of the trailer park's managers, who informed her that no decision would be made until a formal application was filed; however, the managers added that these prospective occupants were unlikely to be accepted since Mrs. Walters' brother already lived in the mobile home

park and park rules prohibited relatives of current residents from becoming tenants. Piqued by this rule, the appellant protested to Dr. Hughes, the owner of the trailer park, who indicated that he had no knowledge that such a rule existed but would look into the matter; Mrs. Lewis then complained to James L. Baer, Esq., an attorney appellant knew to have represented the doctor in the past, who in turn relayed her message to the appellee. On May 2 or 3 the doctor informed Mr. Baer that he had revoked the rule prohibiting relatives as tenants and asked him to so notify the appellant. This, unfortunately, did not end the dispute, as on May 4 or 5 Dr. Hughes advised the attorney that the trailer park superintendents were upset at being overruled by him and that, in order to mollify both his managers and the appellant, he would consider purchasing the mobile home himself. At the doctor's request, Mr. Baer, on May 7, apprised Mrs. Lewis of the appellee's plight and of his resulting interest in acquiring the trailer; later that same day the appellant replied to the attorney that she was willing to sell the house trailer to Dr. Hughes for $5,000. On May 7 Mr. Baer reported appellant's offer to Dr. Hughes, who, without comment as to terms of payment, assented to the $5,000 purchase price. The attorney then signed and mailed to Dr. Hughes a letter, dated May 8, 1973, in confirmation of that conversation.[1] Mrs. Lewis was notified on May 9 by Mr. Baer of the doctor's acceptance of her offer.[2] However, the appellee on May 21 informed Mrs. Lewis that he would not pay the full $5,000 at the time of settlement, offering instead $3,500 cash or, alternatively, $5,000 over a period of time, which prompted the appellant

---

1. The text of the letter reads as follows:

"On Monday, May 7, 1973, at 4:30 P.M., I received a call from Mrs. Betty Lewis who informed me that she will now agree to sell her trailer to you as agreed, for $5,000.00.

"Mrs. Lewis has requested that you send the check made payable to her, to this office. I trust that this clears up what has become a messy matter. Mrs. Lewis requests that payment for the trailer be made this week if at all possible."

2. By mutual agreement, the contract between appellant and Mr. and Mrs. Walters was, at a date undisclosed by the record, rescinded.

to sell the mobile home elsewhere and to institute this suit for fraud [3] and breach of contract.

The circuit court, relying on those facts, held that there was an oral contract between the appellant and Dr. Hughes for the sale of the house trailer, a conclusion which appellee does not challenge on this appeal. Nonetheless, the court decided that the contract was unenforceable under § 2-201 (1) of the UCC, which reads:

"Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing." [4]

To satisfy this statutory requisite, appellant relies on the May 8 letter sent by the attorney to Dr. Hughes in confirmation of their previous telephone conversation.[5] Although the circuit court found that letter to be "sufficient written evidence of the existence of a prior oral contract," a conclusion which is also not contested by appellee, the court held that it is not subscribed in accordance with the dictates of § 2-201 (1) and thus could not be relied on to satisfy the writing requirement. The defect, as perceived by the trial

---

3. The record is silent as to the final disposition of the fraud count; however, no issue as to that count has been raised on this appeal.

4. Neither party disputes that this mobile home falls within the definition of "goods" set out in § 2-105 (1), Commercial Law Article, Md. Code Ann. (1975).

5. The only other writing that could possibly fulfill the requirements of the Statute of Frauds in this case is a letter from Mr. Baer to Dr. Hughes, dated May 14, 1973, advising the doctor to send Mrs. Lewis a check and describing the mobile home and its contents. This letter was not actively relied on by the appellant and would, in any event, be subject to the same objection as to the sufficiency of the signature as is the letter of May 8.

court, was that the only signature appearing on the letter was Mr. Baer's and, even though he was an agent of Dr. Hughes with "authority to transmit [appellee's] acceptance to the [appellant]," he had not been empowered to "make any written memorandum of the sale"; thus he was not an "authorized agent" within the meaning of § 2-201 (1). *See generally* §§ 1-103 and 1-201 (43). We find it unnecessary to consider whether the circuit court correctly determined the extent of the agent's authority,[6] as we conclude that the Statute of Frauds has been otherwise satisfied.

According to § 2-201 (3),

"A contract which does not satisfy the requirements of [§ 2-201 (1)] but which is valid in other respects is enforceable

\* \* \*

(b) If the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted;
. . . ."

The appellant asserts that Dr. Hughes repeatedly acknowledged the existence of the contract in his testimony and that therefore, regardless of its enforceability under § 2-201 (1), the agreement is enforceable under § 2-201 (3) (b). The sole response of appellee to this argument is that it was not raised below and thus, under Rule 885, is not properly before this Court for decision. Considering at the outset appellee's Rule 885 contention, it is true that in *Laporte Corp. v. Cement Corp.*, 164 Md. 642, 645-46, 165 A. 195 (1933) our predecessors held that when a defendant pleads the general issue and asks for a directed verdict on the grounds of legally insufficient evidence, without pleading the Statute of Frauds below or objecting to the alleged contract on the

---

6. Likewise, we need not decide whether Mr. Baer's signing of the May 8 letter was later ratified by Dr. Hughes so as to bridge the authority gap.

basis of it, the statute may not be raised for the first time on appeal.[7] On a motion for reargument in *Laporte*, 164 Md. at 651-53, which is also reported in 168 A. 844 (1933), the Court reaffirmed its decision, declining to follow the rule of prior cases, *e.g.*, *Morgart v. Smouse*, 103 Md. 463, 467, 63 A. 1070 (1906); *Hamilton v. Thirston*, 93 Md. 213, 220, 48 A. 709 (1901); *Semmes v. Worthington*, 38 Md. 298, 317 (1873); *Billingslea v. Ward*, 33 Md. 48, 51 (1870), that the filing of a general issue plea preserves for appeal the question of whether the Statute of Frauds has been satisfied. The decision in *Laporte* was later adhered to by this Court in *Friedman v. Clark*, 252 Md. 26, 31, 248 A. 2d 867 (1969) and *Dove v. White*, 211 Md. 228, 234-37, 126 A. 2d 835 (1956). *But see Smith v. Biddle*, 188 Md. 315, 318, 52 A. 2d 473 (1947). In the case before us, however, while not specifically raised below by either party's pleadings,[8] the question of whether the Statute of Frauds had been complied with was argued in the circuit court by both appellant and appellee, and it was on that issue that the trial judge decided the case. Although the parties and the trial court in discussing the Statute of Frauds issue concerned themselves with whether the requisites of subsection 1 of the statute were satisfied, we think that sufficient to preserve for appeal the issue of whether the statute was fulfilled via subsection 3 (b). Subsection 1 itself specifically states that it is to apply "[e]xcept as otherwise provided in this section," which directs attention to the remainder of § 2-201, including subsection 3 (b). Furthermore, when the appellee argued below that the contract was barred by the Statute of Frauds and the appellant responded that § 2-201 was satisfied, all facets of the issue were preserved for appeal; for, as stated in the decision on the motion for reargument in *Laporte*,

> "what may be regarded as reasons in support of a point, as distinguished from the point or question itself, need not appear stated in the record; this

---

7. Though of no practical significance, *Laporte* was decided under Maryland Code (1924), Art. 5, § 10, a forerunner of Maryland Rule 885.

8. The Statute of Frauds is not among those defenses required by Rule 342 to be specially pleaded.

court will review a decision on the point without restriction to the reasons considered below." 164 Md. at 652.

Consequently, we conclude that the issue of whether the contract can be enforced pursuant to the provisions of § 2-201 (3) (b) is properly before us.

The next step in deciding whether the statute bars enforcement of the contract is to determine just what, if anything, Dr. Hughes did admit concerning the agreement during the course of his testimony at trial. An examination of the record discloses that the doctor testified as follows:

"Q. This . . . conversation [with Mr. Baer], did you regard that as a meeting of the minds that you were to buy a trailer from Mrs. Lewis for $5,000 then or in the immediate future?

A. No, sir, I did not.

Q. What was your understanding of your relationship with Mrs. Lewis at that time?

A. My understanding was we were in a negotiation state really of reaching an agreement as to the purchase of the trailer, and I did not really agree to the terms how to purchase the trailer. But the price I had agreed with Mr. Baer on.

Q. Now I take it, sir, that you were not willing at any time to pay $5,000 cash?

A. That is correct.

\* \* \*

Q. Did you tell [Mr. Baer], as he says, 'O. K. I will buy it at that price,' or not?

A. Yes.

Q. Now the essence of your version, if I understand it correctly, is that your statement was misinterpreted. You did not intend to mean that you would pay $5,000 cash. You intended that you would pay $5,000 on terms of some down and some over a period of time, is that right?

A.  That was not even discussed.

Q.  I understand that. But am I correct that when you said, 'O. K. I will buy it at that price,' that in your mind, at that time, you meant that you would buy it for $2,500 down, whatever it is, plus the rest over a period of time, although you did not say so?

A.  That is right.

\* \* \*

Q.  You have already agreed to $5,000 as the price?

A.  Yes.

Q.  In your mind there exists a reservation as to method of payment that you have not communicated to anyone, is that right?

A.  That is right."

In sum, it is apparent from this, as well as from other portions of the appellee's testimony not here quoted, that at the trial the doctor admitted he told Mr. Baer, without mention of any terms of payment, that he would purchase the mobile home for $5,000. Of course, it is legally irrelevant, in the face of Dr. Hughes' objective manifestation of unconditional assent to the offer, that the doctor thought the contract was still being negotiated and had a subjective desire to impose certain conditions on the manner of payment. *See Missler v. Anne Arundel County*, 271 Md. 70, 80, 314 A. 2d 451 (1974) and cases cited therein; 1 *S. Williston, Contracts* §§ 65, 66, 67A (W. Jaeger 3d ed. 1957). Consequently, when on May 9 the lawyer, in accordance with his agency authority, informed appellant of Dr. Hughes' assent, there was an acceptance of the offer and a contract, as a matter of law, came into existence.[9] *See* § 2-206; 1 *R. Anderson, Uniform Commercial Code* § 2-206:7 (2d ed. 1970).

---

9. Since this contract is silent as to the manner of payment, the full purchase price was "due at the time and place at which the buyer [(appellee) was] to receive the goods." Section 2-310 (a); *see* §§ 2-301, -308, -507; Comment 2 to § 2-507.

However, before reaching the principal issue posed by this case we must, it seems, decide whether an admission that a contract was made is a valid admission for purposes of § 2-201 (3) (b) if made involuntarily, since it has several times been said that there is a conflict of authority on the question. *Presti v. Wilson,* 348 F. Supp. 543, 545 (E.D. N.Y. 1972); *Cox v. Cox,* 292 Ala. 106, 289 So. 2d 609, 613 n. 3 (1974); *W. Hawkland, A Transactional Guide to the Uniform Commercial Code* 30, § 1.1203 (1964); *W. Hawkland, Sales and Bulk Sales* 31 (1958); *see* 3 *R. Dusenberg & L. King, Sales & Bulk Sales Under the Uniform Commercial Code* 2-81 to -82, § 2.043 [3] (1966). It is true that some cases decided prior to the adoption of the UCC by any state indicate that involuntary admissions as to the making of a contract will not satisfy the common law Statute of Frauds, *Smith v. Muss,* 203 Misc. 356, 117 N.Y.S.2d 501 (Sup. Ct. 1952), *appeal dismissed,* 281 App. Div. 957, 122 N.Y.S.2d 377 (1953); *Cash v. Clark,* 61 Mo. App. 636 (1895), and that some commentators have apparently associated those decisions with § 2-201 (3) (b), 1 *R. Anderson, Uniform Commercial Code* § 2-201:45 (2d ed. 1970); *W. Hawkland, Sales and Bulk Sales* 31 (1958). Nevertheless, the cases reaching this issue under the UCC are uniform in concluding that involuntary admissions are sufficient for purposes of § 2-201 (3) (b), *Cohn v. Fisher,* 118 N.J. Super. 286, 287 A. 2d 222, 227 (Super. Ct. 1972); *Reissman Int'l Corp. v. J.S.O. Wood Prods., Inc.,* 10 UCC Rep. Serv. 1165, 1167-68 (N.Y. Civ. Ct. 1972) (discussing various New York Law Revision Commission Reports).[10] As stated by Hawkland in his *Transactional Guide, supra* at page 30,

---

**10.** Other questions posed by § 2-201 (3) (b), but not at issue here, are whether a defendant's demurrer to a suit for breach of contract constitutes an admission of the existence of the contract sufficient to satisfy the Statute of Frauds, *see* Beter v. Helman, 41 Westm. Co. L.J. 7 (Westmoreland County Ct., Pa. 1958) (demurrer not admission for § 2-201 (3) (b) purposes); 1 *R. Anderson, Uniform Commercial Code* § 2-201:45 (2d ed. 1970) (same); 3 *R. Dusenberg & L. King, Sales & Bulk Sales Under the Uniform Commercial Code* 2-79, § 2.04 [3] (1966) (same); *W. Hawkland, A Transactional Guide to the Uniform Commercial Code* 29-30, § 1.1203 (1964) (same), and whether a declaration alleging breach of contract, which is valid in other respects, is demurrable on grounds of the Statute of Frauds, *see* Garrison v. Piatt, 113 Ga.App. 94, 147 S.E.2d 374 (1966) (to sustain

"Subsection 2-201 (3) (b) does not answer [the question of whether involuntary admissions can be utilized], and it will have to be resolved on policy grounds. In this connection, it may be urged, on the one hand, that the defendant should not be required to make the admission, because any waiver of the Statute of Frauds should be exercised voluntarily and not under the threat of perjury. On the other hand, it may be contended that the Statute of Frauds is not designed to protect the welsher. If the defendant made the contract, why should it not be enforceable? If he did not make it, he can deny it and set up the Statute of Frauds. It is only the welsher, therefore, [who] faces the problem of the 'compelled admission,' and the law should have little solicitude for him."

Not only do we consider the latter argument persuasive, we also find ourselves in agreement with the New Jersey Superior Court's statement in *Cohn v. Fisher, supra,* that

"if a party admits an oral contract, he should be held bound to his bargain. The statute of frauds was not designed to protect a party who made an oral contract, but rather to aid a party who did not make a contract, though one is claimed to have been made orally with him." 287 A. 2d at 227.

We, therefore, hold that involuntary admissions can be used to satisfy the Statute of Frauds under § 2-201 (3) (b).

We come then to the basic issue in this case, which is whether the Statute of Frauds is satisfied pursuant to § 2-201 (3) (b) when the party denying the existence of the contract and relying on the statute takes the stand and, without admitting explicitly that a contract was made, testifies to facts which as a matter of law establish that a

demurrer would deprive plaintiff of opportunity to get defendant to admit "in his pleading, testimony or otherwise" that a contract was made); Weiss v. Wolin, 60 Misc. 2d 750, 303 N.Y.S.2d 940, 943-44 (Sup. Ct. 1969) (same under § 8-319); 3 *R. Dusenberg & L. King, supra;* Annot., 17 A.L.R.3d 1010, 1141 (1968). *See also* Kaufman v. Adalman, 186 Md. 639, 648-49, 651-52, 47 A. 2d 755 (1946) (involving lease of real property).

contract was formed. While we have found no case specifically deciding this question, numerous cases dealing with § 2-201 (3) (b) seem to say that in such a situation the requirements of the statute have been fulfilled. *See Baumgold Bros., Inc. v. Allan Fox Co., East,* 375 F. Supp. 807, 813-14 (N.D. Ohio 1973); *Alter & Sons, Inc. v. United Eng'rs & Constructors, Inc.,* 366 F. Supp. 959, 966 (S.D. Ill. 1973); *Hale v. Higginbotham,* 228 Ga. 823, 188 S.E.2d 515, 517 (1972); *Giant Peanut Co. v. Carolina Chemicals, Inc.,* 129 Ga. App. 718, 200 S.E.2d 918, 920 (1973); *Garrison v. Piatt,* 113 Ga. App. 94, 147 S.E.2d 374, 375-76 (1966); *Quad County Grain, Inc. v. Poe,* 202 N.W.2d 118, 120 (Iowa 1972); *Providence Granite Co. v. Joseph Rugo, Inc.,* Mass., 291 N.E.2d 159, 160 (1972); *Chrysler Corp. v. Majestic Marine, Inc.,* 35 Mich. App. 403, 192 N.W.2d 507, 508-09 (1971) (per curiam); *Cohn v. Fisher,* 118 N.J. Super. 286, 287 A. 2d 222, 227 (Super. Ct. 1972); *Rochester Iron & Metal Co. v. Capellupo,* 62 Misc. 2d 264, 307 N.Y.S.2d 133, 135 (Monroe County Ct. 1969); *Reissman Int'l Corp. v. J.S.O. Wood Prods., Inc.,* 10 UCC Rep. Serv. 1165, 1167-68 (N.Y. Civ. Ct. 1972); *Dangerfield v. Markel,* 222 N.W.2d 373, 377-78 (N.D. 1974). *See also Riegel Fiber Corp. v. Anderson Gin Co.,* 512 F. 2d 784, 788 n. 10 (5th Cir. 1975); *Presti v. Wilson,* 348 F. Supp. 543, 545 (E.D.N.Y. 1972); *Cox v. Cox,* 292 Ala. 106, 289 So. 2d 609, 612-13 (1974); *Lippold v. Beanblossom,* 23 Ill.App.3d 595, 319 N.E.2d 548, 549-50 (1974). Moreover, authority for this position can be found in decisions of this Court involving three closely analogous circumstances. In *Oregon Ridge v. Hamlin,* 253 Md. 462, 467-68, 253 A. 2d 382 (1969), we held that enforcement of an oral contract for the redistribution of securities is not barred by the Statute of Frauds of Title 8 of the Uniform Commercial Code when the defendant, at trial, concedes the existence of the agreement. Section 8-319 (d); *accord, Ellis Canning Co. v. Bernstein,* 348 F. Supp. 1212, 1228 (D. Colo. 1972) (alternative holding); *Kohlmeyer & Co. v. Bowen,* 126 Ga. App. 700, 192 S.E.2d 400, 405-06 (1972); *Blankenfeld v. Smith,* 290 Minn. 475, 188 N.W.2d 872, 873 (1971). Since the language of §§ 8-319 (d) and 2-201 (3) (b) is

quite similar, we find *Oregon Ridge* particularly persuasive. We reached a comparable conclusion with respect to the provisions of Section IV, Clause 5 of the Statute of Frauds, 29 Car. II C. 3 (enacted 1676, effective 1677), *J. Alexander, 2 British Statutes In Force in Maryland* 690 (Coe ed. 1912), in the context of an oral contract for the sale of an interest in a partnership. *Adams v. Wilson,* 264 Md. 1, 9-10, 284 A. 2d 434 (1971) (alternative holding). Finally, it has long been settled in this State that oral contracts for the sale of land are enforceable when the defendant admits that the agreement was made. *See Martin v. Michaels,* 259 Md. 346, 348-49, 269 A. 2d 833 (1970) (citing cases); *cf. R.E.C. Management v. Bakst Serv.,* 265 Md. 238, 252-53, 289 A. 2d 285 (1972) (service contract). We hold that the Statute of Frauds does not bar enforcement of the contract involved in this case.

Since it is implicit in the trial judge's findings of fact that he concluded that there was a breach of the contract by the appellee, we will remand the proceedings to the circuit court for entry of judgment in favor of the appellant and for assessment of such damages as that court determines to be proper.

> *Judgment of the Circuit Court for Montgomery County reversed and case remanded to that Court for entry of judgment in favor of appellant against appellee for such damages as that Court finds appellant suffered as a result of the breach of contract.*
>
> *Costs to be paid by the appellee.*