No. 56,328

J. Martin Quaney, William E. Quaney, and James Daniel Quaney, *Appellees*, v. Lowell Tobyne, *Appellant.*

(689 P.2d 844)

Opinion filed October 26, 1984.

*C. L. Laman,* of Laman Law Office, of Clyde, argued the cause and was on the brief for the appellant.

*Frederick W. Godderz,* of Ramskill & Godderz, of Burlingame, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

Prager, J.: This is an action brought by the sellers against the buyer to recover damages for breach of an oral contract for the sale and purchase of 285 steers. The plaintiffs are J. Martin Quaney and his sons, William E. Quaney, and James Daniel Quaney, farmers and cattlemen residing in Osage County. The defendant, Lowell Tobyne, is a farmer-rancher and feed lot operator who resides in Washington County, Kansas. In this

action, plaintiffs sought to recover the difference between the price which defendant agreed to pay for the cattle and the price received for the cattle when sold by plaintiffs after defendant Tobyne refused to take delivery of the cattle on the agreed delivery date.

The factual circumstances in the case are not greatly in dispute and essentially are as follows: The plaintiff, Martin Quaney, and the defendant, Lowell Tobyne, had both been engaged in the buying and raising of cattle for many years prior to the transaction between them, although they were not personally acquainted. Approximately two or three days prior to August 15, 1982, Tobyne telephoned Quaney and inquired if he had any cattle for sale. Quaney told him that he would have some cattle for sale and described the type of cattle, the approximate weight, the number of cattle for sale, the location of the cattle and the price that he was willing to accept for the cattle. Quaney and Tobyne then arranged to meet the following Sunday at the pasture where the cattle were kept in Wabaunsee County. On Sunday, August 15, 1982, Martin Quaney and Tobyne met at the pasture as agreed. Also present were defendant's son, Dwight Tobyne, and Delmar Haufler, a friend of the Quaneys. The parties drove into a large pasture where 260 cattle were kept where they viewed the cattle. There was a smaller pasture where 25 cattle were kept, but the road to this pasture was in poor condition due to a recent rain, and Tobyne declined Quaney's offer to drive to that pasture to view the other cattle. From the testimony, it appears that Tobyne told Quaney that he was satisfied with the cattle and if the other 25 were of the same type as the 260 he had observed then he did not need to see them.

According to plaintiffs' evidence, while the parties were in the pasture, Quaney and Tobyne agreed that Tobyne would purchase 285 cattle at a price of 65¢ per pound. The weight of the cattle to be used as a basis to determine the price was to be determined when the cattle were taken out of the pasture and weighed at either the St. Marys sales barn, or the Manhattan sales barn, whichever one Tobyne would use. No weight shrinkage would be allowed. Tobyne agreed that he would contact the manager of the pasture, Oliver Hess, in order to arrange for rounding up and loading the cattle for which Tobyne agreed to be responsible. Tobyne was to load the cattle on or

before October 1, 1982, since Quaney's lease on the pasture expired October 10, 1982.

There was testimony that this was a typical sales transaction involving cattle and, when the parties left that day, there was nothing further to be decided regarding the sale of the cattle to Tobyne. Tobyne agreed to send an $8,000 down payment to Quaney at a later date, since he did not have the money with him that day. Tobyne also stated that he would prepare and deliver to Quaney a written contract at the same time he sent the down payment. The written agreement and down payment were never delivered by Tobyne.

At the trial, there was testimony of another cattleman that the customary practice in buying and selling cattle in the area was by oral agreement. Plaintiffs' evidence was undisputed that, at the time the oral contract was made, several other persons were interested in buying plaintiffs' cattle. Martin Quaney testified that, on August 15, 1982, he told Tobyne that there were other persons interested in purchasing the cattle, if Tobyne did not want them. According to Quaney, defendant assured him that he would take the cattle. On that same date, when Martin Quaney arrived home from the pasture following his meeting with Tobyne, there was a cattle buyer awaiting him who was interested in the cattle. Quaney told him that the 285 steers had been sold so they discussed the sale of other cattle. Quaney testified that cattle prices increased for a period during August and September but plaintiffs did not try to sell the cattle to anyone else. On August 19, 1982, Martin Quaney was involved in an automobile accident and suffered severe injuries to his back and neck. As a result of those injuries he was hospitalized until the early part of September, 1982. The operation of the Quaney farm and ranch was left in the hands of his two sons, William E. Quaney and James Daniel Quaney. Several times during the later part of August and during the month of September, William E. Quaney and James Daniel Quaney contacted Tobyne by telephone and inquired about the down payment. Each time, Tobyne made some excuse why he had not delivered the down payment to them. On September 23, 1982, Martin Quaney talked to Tobyne who told him the same things he had told the two sons. In none of these conversations did Tobyne state that he was not buying

the cattle or that other terms of agreement were necessary before he could buy the cattle.

Oliver Hess, the manager of the pasture, testified that several days prior to September 23, 1982, Tobyne discussed with him the arrangements for Tobyne to pick up the cattle that he had bought from Quaney. According to Hess, Tobyne told him without equivocation that he had bought the cattle. On September 23, 1982, and again on September 30, 1982, Tobyne discussed with Hess the arrangements for rounding up and loading the Quaney cattle. Hess and Tobyne agreed that the date for loading the cattle would be October 2, 1982. Hess made written notes on these conversations on the dates they occurred.

On October 1, 1982, Tobyne telephoned Martin Quaney and told him that he was not going to purchase the cattle. Tobyne never did tell Hess that he was not buying the cattle, and Hess was waiting at the pasture to load the cattle for Tobyne when Quaney notified Hess that Tobyne was not going to buy plaintiffs' cattle. The Quaneys subsequently sold the cattle to another party but received only 59.5¢ per pound. The Quaneys then filed this action to recover their damages for breach of the oral contract. In response thereto, Tobyne denied in his answer the existence of an oral sales contract and raised as an affirmative defense the statute of frauds (K.S.A. 84-2-201). Essentially, it was defendant's position that the parties had never had a meeting of the minds on the sale and purchase of the cattle, and that no binding contract was to come into existence until a formal, written agreement had been prepared and signed by both parties. Defendant maintained that he and the Quaneys were complete strangers, knew very little about each other, and first met face-to-face on August 15, 1982, the date plaintiffs claimed the contract for the sale of the cattle was made.

The defendant filed a motion for summary judgment based upon the defense that the statute of frauds (K.S.A. 84-2-201) barred enforcement of the oral agreement, and, furthermore, that the doctrine of promissory estoppel was not applicable in the case. Defendant's motion for summary judgment was denied by the trial court. The case was then tried by a jury which found in its special verdicts that the plaintiffs and defendant had entered into an oral contract for the purchase and sale of the cattle and that the terms of the contract were for the sale of 285 head of cattle (steers) at 65¢ per pound, with no allowance for shrinkage,

with an \$8,000 down payment and a written contract to be provided by defendant. The cattle were to be picked up on or before October 1, 1982, and the balance was due upon possession of the cattle. The jury also found that the doctrine of promissory estoppel, as explained in the instructions, should be used to enforce the oral agreement of the parties, and that the total amount of damages sustained by the plaintiffs was \$16,826.45. Defendant's motion for a new trial was thereafter denied, and he appealed.

The sole point presented in the defendant's brief is stated as follows: Whether the trial court erred in not applying the statute of frauds to bar the claim of the plaintiffs against the defendant where the evidence of the plaintiffs when viewed in a light most favorable to the plaintiffs does not allow the plaintiffs to avail themselves to the exception of promissory estoppel to the bar created by the statute of frauds. As we see it, there are two basic issues of law to be determined on the appeal:

(1) Does the statute of frauds (K.S.A. 84-2-201) bar the plaintiffs from recovery on the oral contract in this case or is the exception set forth in subsection (3)(b) applicable to remove the bar of the statute?

(2) If the exception is not applicable, does the doctrine of promissory estoppel apply so as to enable the plaintiffs to avoid the defense of the statute of frauds?

We first consider the issue whether plaintiffs' action on the oral sales contract is barred by the Statute of Frauds (K.S.A. 84-2-201) which provides as follows:

"84-2-201. **Formal requirements; statute of frauds.** (1) Except as otherwise provided in this section a contract for the sale of goods for the price of \$500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

"(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

"(3) *A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable*

"(a) if the goods are to be specially manufactured for the buyer and are not

suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

"(b) *if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted;* or

"(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (section 84-2-606)." (Emphasis supplied.)

Under subsection (1) of the statute an oral contract for the sale of goods for the price of $500 or more is not enforceable unless one of the exceptions under subsection (3) is satisfied. It is agreed that the exceptions contained in subsection (3)(a) and (c) are not applicable, and that plaintiffs must rely solely on section (3)(b) in order to avoid the application of the statute. The issue of law presented is whether, on the record before us, the defendant, as the party against whom enforcement of the oral contract is sought, admitted in his pleadings, testimony, or otherwise in court that an oral contract for sale was made. This exception was held applicable in *Wendling v. Puls,* 227 Kan. 780, 610 P.2d 580 (1980), which like this case also involved an action for the breach of an oral contract for the purchase and sale of cattle. In *Wendling,* K.S.A. 84-2-201 was discussed and it was noted that all of the parties had frankly and openly admitted the existence of the contract during their oral testimony, with complete agreement on price, quantity of purchase, and date of delivery. In addition, the seller had served a written notice on the buyers containing the provisions of the contract to which the buyers offered neither written nor oral objections. In the case now before us, the plaintiffs/sellers did not serve such a notice on the defendant/buyer. So it is necessary that the record establish that the defendant/buyer made the admissions required under K.S.A. 84-2-201(3)(b). It also should be noted that K.S.A. 84-2-201 was set up as a defense to an oral contract in *Miller v. Sirloin Stockade,* 224 Kan. 32, 578 P.2d 247 (1978), which held that the exception provided for in subsection (3)(b) is applicable only if the admission is made by a party to the litigation or by an authorized agent of a party before the termination of his authority. A former employee of a corporation was held to be without

authority to bind the corporation by "admissions" made during the taking of the former employee's deposition.

In the case now before us, we are required to consider the "admissions" made by the defendant, Lowell .Tobyne, in the course of the litigation. This requires us to consider any admissions made in his pleadings, testimony, or otherwise in court to the effect that a contract for sale was made. In this case, the only admissions made by defendant were either in his deposition or in his testimony taken at the time of trial. Before taking up defendant's admissions, we should first consider the principles of law involved in the construction and application of K.S.A. 84-2-201. There is an annotation on this subject in 88 A.L.R.3d 416, where cases from various jurisdictions are set forth discussing the purposes of the statute and the question as to what constitutes an admission that the contract for sale was made within the meaning of the statute. In its summary, the annotation indicates that the courts have found three reasons for the adoption of the statutory provision contained in K.S.A. 84-2-201(3)(b) excepting from the operation of the statute of frauds contracts whose existence has been admitted by the party against whom enforcement is sought. It has been stated by the courts that the purposes of the statute are (1) to provide that a party cannot admit the existence of an oral contract for the sale of goods and simultaneously claim the benefit of the statute of frauds, (2) to prevent the statute of frauds from becoming an aid to fraud, and (3) to expand the exceptions to the nonenforceability of oral contracts under the statute of frauds.

In order to come within the terms of the exceptions stated in 84-2-201(3)(b), a statement must in fact constitute an admission, and the courts in several cases have expressly considered what constitutes an admission that a contract for sale was made within the meaning of the statutory exception. A problem has arisen in this regard where a party admits the essential terms of the oral contract but denies that a final agreement or meeting of the minds was ever actually consummated. In several cases it has been held that the testimony of the party against whom enforcement of an oral contract for the sale of goods is sought, which, while denying the existence of the oral contract, admits facts which as a matter of law establish the existence of the contract, constitutes an admission within the meaning of the statute.

A leading case in this area is *Lewis v. Hughes,* 276 Md. 247,

346 A.2d 231 (1975), which held that the testimony of a buyer of a mobile home that he did not consider that there was a meeting of the minds between himself and the seller concerning the sale of the mobile home, although he had agreed to the purchase price, constituted an objective manifestation of unconditional assent to the offer which when admitted at the trial was sufficient to satisfy the statutory exception. The court in *Lewis* adopted the following as a statement of the law:

"Statute of frauds is satisfied . . . when the party denying the existence of the contract and relying on the statute takes the stand and, without admitting explicitly that a contract was made, testifies to facts which as a matter of law establish that a contract was formed." pp. 256-57.

In *Dangerfield v. Markel*, 222 N.W.2d 373 (N. D. 1974), the opinion discusses the required standard of proof in a case involving an admission of the existence of an oral contract in court. The case involved a contract between a potato buyer and farmer for the purchase of potatoes. The buyer alleged that the farmer breached the contract by failing to deliver the potatoes as contracted for. In considering admissions made by the seller, the court stated that the parties against whom an oral contract is sought to be enforced need not admit there is a contract or admit the contract in the exact terms claimed. The court concluded that, if a fair consideration of the party's testimony, and its implications under the circumstances established by the record, establishes the claimed agreement, it will be enforced.

Another case is *Cargill Inc., Commodity Marketing Div. v. Hale*, 537 S.W.2d 667 (Mo. App. 1976), where the defendant in a breach of contract action involving the sale and purchase of soybeans on cross-examination at the trial answered, "Yes, sir" to plaintiff's cross-examination question, "Didn't you agree to sell these beans to [plaintiff's manager] over the phone for a certain price?", even though the seller denied that there had been a meeting of the minds.

The question of what constitutes an admission under U.C.C. § 2-201(3)(b) is discussed in 2 Anderson, Uniform Commercial Code § 2-201:216, pp. 116-17 (3rd ed. 1982), where the author states:

"There is an admission for the purpose of UCC § 2-201(3) when there is a manifestation that fairly communicates the concept that the party has admitted the existence of the contract. It is not necessary that there be an express

declaration that the party 'admits' the making of an oral 'contract.' It is sufficient that his words or conduct reasonably lead to that conclusion.

.   .   .   .

"When a party admits facts the legal consequence of which is that there is a contract, it is to be concluded that there has been an admission of the existence of the contract. The fact that the party does not appreciate or understand that the subsidiary facts admitted by him have the effect of creating a contract or that he is unwilling to state that they did does not negate the fact that a 'contract' has been admitted. On this basis, it has been held that there is an 'admission' so as to take an oral contract out of the statute of frauds when the party denying the existence of a contract and pleading the statute of frauds testifies to facts from which it can be concluded that a contract had been formed, even though he does not expressly admit that a contract was formed."

2 Williston on Sales § 14-9, p. 306 (4th ed. 1974), in discussing the admissions exception, states:

"The mere fact that a party has, by pleading, testimony or otherwise in court admitted to the existence of a contract does not mean that it is an admission of every individual term of the contract between the parties. Of course, if the party against whom enforcement is sought admits to the terms of the contracts *seriatum*, it would be extremely difficult to visualize a situation where the trier of the facts would not find that an oral agreement between the parties had not in fact taken place."

In *Decatur Cooperative Association v. Urban*, 219 Kan. 171, 547 P.2d 323 (1976), the court referred to the requirements of K.S.A. 84-2-201 and stated that the statute of frauds was enacted to prevent fraud and injustice, not to foster or encourage it, and a court of equity will not ordinarily permit its use as a shield to protect fraud or to enable one to take advantage of his own wrong. The court then proceeded to hold that a party to an oral contract may be equitably estopped to assert the statute of frauds as a defense. The important point is that the court construed the statute of frauds liberally to achieve a result which was equitable and just under the circumstances of the case rather than take a strict approach to the application of the statute.

We also have the relevant consideration of what constitutes an "admission" that a contract for sale was made. It is a well recognized rule that the terms of an oral contract and the consent of the parties may be proved by their *acts* and the attending circumstances, as well as by the words they have employed. The acts and conduct of a party are frequently as expressive as spoken or written statements, and they may be proved in some instances under the principles applicable to admissions. 29 Am. Jur. 2d,

Evidence § 623, p. 677. For example, in *Allen v. Bowling,* 173 Kan. 485, 249 P.2d 679 (1952), it was held that the existence of an oral agreement and its terms may be ascertained from a combination of written communications and the *acts* of the parties. In this regard, we also note 31A C.J.S., Evidence § 291 and the cases cited, which declare that an admission may be made by *conduct,* such as conduct which may fairly be interpreted as an admission against interest and conduct inconsistent with the party's contentions in the litigation.

We have considered all of these various authorities and the principles of law established thereby and have concluded that the exception to the statute of frauds contained in K.S.A. 84-2-201(3)(b) is satisfied when the party who has denied the existence of an oral contract in reliance on the statute takes the stand and, without admitting explicitly that a contract was made, testifies as to his statements or his actions which establish the terms of the oral contract claimed by the opposing party. It is not necessary that there be an express declaration in which the party admits the making of the oral contract. It is sufficient if his words or admitted conduct reasonably lead to that conclusion.

Turning to the testimony of the buyer, Lowell Tobyne, in the record now before us, the question to be determined is whether there are sufficient admissions as to the existence and terms of the oral contract to satisfy the statutory exception in K.S.A. 84-2-201(3)(b). As noted above, the defendant in one portion of his testimony denied that there had been a final meeting of the minds and further testified that there was to be no binding contract until the contract was reduced to writing. On cross-examination, however, the defendant testified that he telephoned plaintiff Martin Quaney and asked him if he had any cattle for sale, and Quaney replied that he did. He was told that all of the cattle were steers and that Quaney was asking a price of 65¢ per pound. At Quaney's suggestion, he met Quaney at the pasture on August 15, 1982, and drove around and looked at the cattle in the large pasture. He stated that he was satisfied with the quality and type of those cattle. He was told that Quaney had cattle in another pasture and Quaney offered to take him down to the other pasture. He admitted that he did not need to see the other cattle if they were similar to the cattle he had just looked at. He was told by Quaney that they were the same type of cattle that he

had just seen. Defendant stated that he *agreed* on a 65¢ per pound price for the cattle on that day. He *agreed* with Quaney that he would load the cattle out around October 1, 1982. He *agreed* that the cattle would be weighed at either St. Marys or Manhattan, Kansas. It was discussed that Mr. Hess would round up the cattle and deliver the same to the defendant for loading. A down payment of $8,000 was agreeable with both parties. He mentioned to Quaney that he was going to put together a written agreement and bring it down to Quaney. From this testimony, it seems clear to us that the defendant admitted in his testimony all of the terms of the agreement for sale and purchase of the cattle as claimed by the plaintiffs. To summarize, in his testimony the defendant testified as to the following terms of the contract:

(1) He was satisfied with the quality and type of cattle — 285 steers were to be purchased.
(2) He agreed on a price of 65¢ per pound.
(3) He agreed that the cattle would be weighed at St. Marys or Manhattan to establish their weight.
(4) A loading date for the cattle around October 1, 1982, was agreed upon.
(5) He agreed on a down payment of $8,000.

In addition to this, the defendant testified as to *conduct* which gave recognition to the finality and binding effect of the agreement. After Martin Quaney was injured in the automobile accident on August 19, 1982, the defendant had several telephone conversations with William E. Quaney and James Daniel Quaney. He admitted that in none of these conversations did he state that he was not buying the cattle or indicate that an agreement had not been consummated. As late as September 23, and September 30, 1982, the defendant discussed with Oliver Hess, the manager of the pasture leased to plaintiffs where the cattle were kept, arrangements for the defendant to pick up the cattle. It was agreed that October 2, 1982, was to be the date for the loading of the cattle. On October 1, 1982, the defendant called Martin Quaney and told him that he would not be able to purchase the cattle.

From our analysis of this testimony, we have concluded that, although the defendant did not openly and frankly admit to an oral agreement, his testimony sufficiently establishes that an oral agreement existed. The defendant acknowledged all the princi-

pal terms of the agreement. The parties had agreed on a price per pound, type and quality of the cattle, place of loading, place of weighing, and the down payment. Although the defendant never paid the down payment or drew up a written contract as he volunteered to do, we hold that his testimony contained admissions of his· statements and actions sufficient to satisfy the requirements of K.S.A. 84-2-201(3)(b).

Since the defendant raised several defenses to the contract, the issues were submitted to the jury and the jury found that the plaintiff and defendant had entered into an oral contract for the purchase and sale of the cattle. There was substantial competent evidence to support that finding. In view of the admissions which the defendant made in his testimony at the trial, the defense of the statute of frauds was removed from the case in accordance with K.S.A. 84-2-201(3)(b).

In view of our holding on this issue, the question as to the applicability of the doctrine of promissory estoppel as a defense to the bar created by the statute of frauds becomes moot. We note, however, the holding of this court in *Decatur Cooperative Association v. Urban*, 219 Kan. 171. That case involved an action for breach of an oral contract for the sale and purchase of wheat. In that case promissory estoppel was successfully asserted to preclude the statute of frauds as a defense to an oral contract for the sale of goods.

On the basis of the record before us, we find that the issues were properly formulated by court and counsel and submitted to the jury which resolved all issues in favor of the plaintiffs in accordance with established legal principles.

The judgment of the district court is affirmed.