John WEHRY, Appellant–Defendant,

v.

Bill DANIELS, Appellee–Plaintiff.

No. 06A01–0208–CV–311.

Court of Appeals of Indiana.

March 7, 2003.

Joseph Leon Payne, Austin, for Appellant.

Brett R. Fleitz, Kroger, Gardis & Regas LLP, Indianapolis, for Appellee.

## OPINION

ROBB, Judge.

John Wehry appeals the trial court's judgment in favor of Bill Daniels in Daniels' breach of contract action against Wehry. We affirm.

### Issue

Wehry raises one issue which we restate as whether the trial court erred in entering judgment in favor of Daniels because there was no written contract.

### Facts and Procedural History

In February 2002, Daniels filed a breach of contract claim against Wehry in small claims court. At a hearing on the claim, Daniels testified that he sells Formula One memorabilia in Lebanon, Indiana. In September 2001, he sold an autographed Michael Schumacher helmet to Wehry for $3500.00. While Wehry was at Daniels' shop, Wehry noticed a scaled down reproduction of a 1985 Aryton Senna helmet. Wehry told Daniels that he would like to purchase the helmet. Daniels explained that the helmet was sold in a set of three for $9,000.00. Wehry responded that he was only interested in the 1985 helmet, and that he was willing to pay up to $3,000.00 for it. Daniels told Wehry that he would contact the distributor in Europe about the helmet to see if the distributor would break up the set.

A few days later, Daniels informed Wehry that he could purchase the 1985 helmet separately from the set. Wehry told Daniels to go ahead and order the helmet and he would pick it up as soon as it arrived. The helmet arrived in Daniels' shop on October 1, 2001. When Daniels contacted Wehry about the helmet, Wehry asked Daniels if he would be getting in a 2001 replica Ferrari model. Daniels responded that the models would be in in December and that Wehry's price for one would be $2000.00. Wehry said he would pick up the model and the helmet at the same time and to let him know when the model came in.

The first week of December, Daniels called Wehry and told him that the Ferrari model was in. Wehry responded that he needed some Christmas presents and would be in to pick up both items the following week. When Wehry did not pick up the items the following week, Daniels telephoned him. Wehry explained that he had been busy and would pick up the items before Christmas. According to Daniels, Christmas came and went, and Wehry never picked up the items. Daniels continued to telephone Wehry, who told Daniels that he still wanted the items.

Daniels eventually filed this claim in small claims court seeking $2887.50 in damages. Daniels claimed that he told Wehry before he ordered the helmet that it would cost $2750.00. The damages that he sought included the cost of the helmet, sales tax, and court costs. The Ferrari model was not a part of the claim because Daniels was able to sell it to someone else. Daniels explained the he is pursuing the claim on the helmet because it was a special order.

Also at the hearing on Daniels' claim, Wehry responded as follows during cross-examination when asked if he told Daniels to order the helmet for him: "At Seventeen ($1700.00) Eighteen Hundred Dollars ($1800.00) yes." Tr. p. 26. According to Wehry, Daniels did not tell him that the helmet would cost $2750.00 until the third telephone call that Daniels made to Wehry about picking up the helmet. In July 2002, the trial court entered an order in favor of Daniels for $2,926.50–$2,887.50 for the helmet and sales tax and $39.00 in court costs. Wehry now appeals.

*Discussion and Decision*

I. Standard of Review

Judgments in small claims actions are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). When reviewing claims tried by the bench without a jury, we shall not set aside the judgment "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). In determining whether a judgment is clearly erroneous, we do not reweigh the evidence or determine the credibility of witnesses. *Hochstedler v. St. Joseph County Solid Waste Management Dist.*, 770 N.E.2d 910, 914 (Ind.Ct.App.2002), *trans. denied*. Rather, we consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.*

A judgment in favor of a party having the burden of proof will be affirmed if the evidence was such that from it a reasonable trier of fact could conclude that the elements of the party's claim were established by a preponderance of the evidence. *Id.* This deferential standard of review is particularly important in small claims actions where trials are "informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law." S.C.R. 8(A).

II. Statute of Frauds

Wehry argues that the trial court erred in entering judgment in favor of Daniels because there was no written contract. Specifically, Wehry contends that the "contract of sale of the helmet did not comply with the statute of frauds and did not fall within an exception to the statute of frauds." Appellant's Brief at 3. Daniels concedes that there is no written agreement; however, he argues that one of the exceptions to the statute of frauds applies in this case. We agree with Daniels.

Indiana Code section 26–1–2–201 provides in pertinent part as follows:

(1) Except as otherwise provided in this section, a contract for the sale of goods for the price of five hundred dollars ($500) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon, but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

* * *

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable: ...

(b) if the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted. . . .

The purpose of this exception is "(1) to provide that a party cannot admit the existence of an oral contract for the sale of goods and simultaneously claim the benefit of the statute of frauds, (2) to prevent the statute of frauds from becoming an aid to fraud, and (3) to expand the exceptions to the nonenforceability of oral contracts under the statute of frauds." *Quaney v. Tobyne*, 236 Kan. 201, 689 P.2d 844, 849 (1984) (citing Timothy E. Travers, *Construction and Application of UCC § 2–201(3)(b) Rendering Contracts of Sale Enforceable Notwithstanding Statute of Frauds, to Extent if is Admitted in Pleading, Testimony, or Otherwise in Court*, 88 A.L.R.3rd 416 (1978 and Supp.2002)). *See*

*also* White and Summers, Uniform Commercial Code Handbook, sec. 2–5 at 57, ("Certainly it makes an open mockery of the statute to permit the defendant to use the statute effectively as a defense, yet in pleadings or in open court admit a contract!").

Although we have found no Indiana cases considering what constitutes an admission within the statutory term, courts in other jurisdictions have considered this issue. For example, the Maryland Supreme Court has stated that the "[s]tatute of frauds is satisfied ... when the party denying the existence of the contract and relying on the statute takes the stand and, without admitting explicitly that a contract was made, testified to facts which as a matter of law establish that a contract was formed." *Lewis v. Hughes*, 276 Md. 247, 256–57, 346 A.2d 231, 236 (1975). Similarly, the North Dakota Supreme Court determined that a contract will be enforced if a fair consideration of the party's testimony and its implications under the circumstances established by the record, established the agreement. *Quaney*, at 208, 689 P.2d at 849 (citing *Dangerfield v. Markel*, 222 N.W.2d 373 (N.D.1974)). *See also* 2 Anderson, Uniform Commercial Code § 2–201:216, pp. 116–17 (3rd ed. 1982) ("There is an admission for the purpose of UCC § 2–201(3) when there is a manifestation that fairly communicates the concept that the party had admitted the existence of the contract. It is not necessary that there be an express declaration that the party 'admits' the making of an oral 'contract.' It is sufficient that his words or conduct reasonably lead to that conclusion. . . . The fact that the party does not appreciate or understand that the subsidiary facts admitted by him have the effect of creating a contract or that he is unwilling to state that they did does not negate

the fact that a 'contract' has been admitted.").

Courts in other jurisdictions have also stated that the statutory exception does not refer to a contract complete in all of its terms, but to a transaction sufficient to stand as proof that the parties did in fact enter into a contractual relationship. *Jackson v. Meadows*, 153 Ga.App. 1, 264 S.E.2d 503, 505 (1980); *Quaney*, at 209, 689 P.2d at 850 (citing 2 Williston on Sales, § 14–9, p. 306 (4th ed. 1974)) ("The mere fact that a party has, by pleading, testimony or otherwise in court admitted to the existence of a contract does not mean that it is an admission of every individual term of the contract between the parties.") Therefore, if the contract is otherwise complete, it need not show an agreement on price. *Jackson*, 264 S.E.2d at 503.

In *Cargill Inc., Commodity Mktg. Div. v. Hale*, 537 S.W.2d 667, 669 (Mo.Ct. App.1976), the plaintiff asked the defendant during cross-examination if the defendant had agreed to sell soy beans over the phone for a certain price. The defendant responded, "Yes, Sir." The Missouri Court of Appeals found that the defendant's affirmative response constituted an admission within the meaning of the statutory exception to the statute of frauds. *Id.* The facts before us are analogous to those in *Cargill*. Here, Wehry also responded affirmatively when asked if he told Daniels to order the helmet for him. This testimony also constitutes an admission within the meaning of the statute, and the contract is therefore enforceable by Daniels.

Once the existence of the contract is established, the policy behind the statute is fulfilled, and the only remaining task is to ascertain the precise terms of the contract. *Dangerfield*, 252 N.W.2d at 190. Where, as here, the parties dispute a contractual term, their dispute raises a factual issue for the trier of fact, which should be decided in a manner consistent with the other terms of the contract admitted by the parties. *Id.*

Our review of the record before us reveals that Wehry stated that he agreed to pay $1700.00 to $1800.00 for the helmet, and Daniels testified that Wehry agreed to purchase the helmet for $2750.00. A set of three helmets costs $9,000.00. It was therefore reasonable for the trier of fact to conclude that Wehry agreed to pay $2750.00 for one of the helmets. Our standard of review precludes us from reweighing the evidence or judging the credibility of witnesses. *See Hochstedler.*

### Conclusion

Although there was no written contract, the trial court did not err in entering judgment in favor of Daniels because one of the exceptions to the statute of frauds applies in this case.

Affirmed.

BAILEY and BARNES, JJ., concur.