118 N.J. Super. 286 (1972)
287 A.2d 222
ALBERT L. COHN, PLAINTIFF,
v.
DONAL L. FISHER, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided January 24, 1972.
*289 Mr. Daniel Crystal for plaintiff (Messrs. Cohn and Lifland, attorneys; Mr. Albert L. Cohn, on the brief).
Mr. Donal L. Fisher pro se.
ROSENBERG, J.C.C. (temporarily assigned).
Plaintiff Albert L. Cohn (hereinafter Cohn) moves for summary judgment against defendant Donal L. Fisher (hereinafter Fisher). The controversy concerns an alleged breach of contract for the sale of Cohn's boat by Fisher.
On Sunday, May 19, 1968, Fisher inquired of Cohn's advertisement in the New York Times for the sale of his 30-foot auxiliary sloop. Upon learning the location of the sailboat, Fisher proceeded to the boatyard and inspected the sloop. Fisher then phoned Cohn and submitted an offer of $4,650, which Cohn accepted. Both agreed to meet the next day at Cohn's office in Paterson. At the meeting on Monday, May 20, Fisher gave Cohn a check for $2,325 and affixed on same: "deposit on aux. sloop, D'Arc Wind, full amount $4,650." Both parties agreed to meet on Saturday, May 25, when Fisher would pay the remaining half of the purchase price and Cohn would presumably transfer title.
A few days later Fisher informed Cohn that he would not close the deal on the weekend because a survey of the boat could not be conducted that soon. Cohn notified Fisher that he *290 would hold him to his agreement to pay the full purchase price by Saturday. At this point relations between the parties broke down. Fisher stopped payment on the check he had given as a deposit and failed to close the deal on Saturday.
Cohn then re-advertised the boat and sold it for the highest offer of $3,000. In his suit for breach of contract Cohn is seeking damages of $1,679.50 representing the difference between the contract price with Fisher and the final sales price together with the costs incurred in reselling the boat.
A motion for summary judgment is designed to provide a prompt and inexpensive method of disposing of any cause which a discriminating search of the merits in the pleadings, depositions and admissions on file, together with the affidavits submitted on the motion, clearly shows not to present any genuine issue of material fact requiring disposition at a trial. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74 (1954). The test for determining whether to grant or deny a motion for summary judgment under R. 4:46-2 was there set forth by Justice Brennan:
The standards of decision governing the grant or denial of a summary judgment emphasize that a party opposing a motion is not to be denied a trial unless the moving party sustains the burden of showing clearly the absence of a genuine issue of material fact. At the same time, the standards are to be applied with discriminating care so as not to defeat a summary judgment if the movant is justly entitled to one. [at 74]
Defendant contends in his answer that there was no breach of contract since the agreement of sale was conditional upon a survey inspection of the boat. However, in his depositions defendant candidly admits that neither at the time the offer to purchase was verbally conveyed and accepted nor on the following day when he placed a deposit on the boat did he make the sale contingent upon a survey. This court holds that it may render a decision on the applicable law involved since the movant has clearly excluded any *291 reasonable doubt as to the existence of any genuine issue of material fact. For, as noted by the court in Judson, supra:
Nor is summary judgment to be denied if other papers pertinent to the motion show palpably the absence of any issue of material fact, although the allegations of the pleadings, standing alone, may raise such an issue. Summary judgment procedure pierces the allegations of the pleadings to show that the facts are otherwise than as alleged. [at 75]
The essentials of a valid contract are: mutual assent, consideration, legality of object, capacity of the parties and formality of memorialization. In the present litigation dispute arises only to the elements of mutual assent and formality of memorialization.
N.J.S.A. 12A:2-204(1) states that "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Although defendant has admitted to the court that at no time did he condition his offer to purchase the boat upon a survey inspection, he still asserts that the survey was a condition precedent to the performance of the contract. Thus, the issue arises as to the nature of the bargain agreed upon by the parties. N.J.S.A. 12A:1-201(3) defines "agreement" as meaning:
* * * the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this Act (12A:1-205 and 2-208). Whether an agreement has legal consequences is determined by the provisions of this Act, if applicable; otherwise by the law of contracts (12A:1-103).
Under the objective theory of mutual assent followed in all jurisdictions, a contracting party is bound by the apparent intention he outwardly manifests to the other contracting party. To the extent that his real, secret intention differs therefrom, it is entirely immaterial. See Looman Realty *292 Corp. v. Broad St. Nat. Bank of Trenton, 74 N.J. Super. 71 (App. Div. 1962); Leitner v. Braen, 51 N.J. Super. 31 (App. Div 1958).
The express language of the contract, failing to manifest an intention to make the sale of the boat conditioned on a survey, and defendant failing to present evidence that the condition of a survey was implied under any section of the Uniform Commercial Code or in the general law of contracts, this court concludes that the agreement between the parties was exclusive of a condition precedent for a survey of the boat.
As to the element of formality of memorialization, N.J.S.A. 12A:2-201 requires that a contract for the sale of goods for the price of $500 or more, to be enforceable, must comply with the statute of frauds.
The applicable sections of N.J.S.A. 12A:2-201 (exclusive of those sections dealing with merchants) are:
(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

* * * * * * * *
(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

* * * * * * * *
(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or
(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (12A:2-606).
Thus in the present case, there are three alternatives by which the contract could be held enforceable:
(1) under N.J.S.A. 12A:2-201(1) the check may constitute a sufficient written memorandum;

*293 (2) under N.J.S.A. 12A:2-201(3) (b) defendant's testimony in depositions and his answers to demands for admission may constitute an admission of the contract, or
(3) under N.J.S.A. 12A:2-201(3) (c) payment and acceptance of the check may constitute partial performance.
The above issues, arising under the Uniform Commercial Code adopted by this State on January 1, 1963, are novel to the courts of New Jersey. For such reason this court will determine the enforceability of the contract under each of the alternatives. Ample authority for resolving the issues is found in the notes provided by the framers of the Code and in the decisions of our sister states.
With regard to the question of whether the check satisfies the statute of frauds as a written memorandum, N.J.S.A. 12A:2-201(1) requires (1) a writing indicating a contract for sale, (2) signed by the party to be charged, and (3) the quantity term must be expressly stated. The back of the check in question bore the legend "deposit on aux. sloop, D'Arc Wind, full amount $4,650." Thus the check seems to prima facie satisfy the requirements in that: it is a writing which indicates a contract for sale by stating the subject matter of the sale (aux. sloop, D'Arc Wind), the price ($4,650), part of the purchase terms  50% down (deposit of $2,325), and by inferentially identifying the seller (Albert Cohn, payee) and the purchaser (Donal Fisher, drawer); it is signed by the party against whom enforcement is sought (Donal Fisher); and it expressly states the quantity term (the D'Arc Wind). Thus the check, although not a sales contract, would comply with the requirements of the statute of frauds under N.J.S.A. 12A:2-201 (1).
Such a result, however, would be in conflict with the case law of New Jersey. As noted in the New Jersey Study Comment to § 12A:2-201, par. 3, under both the Uniform Sales Act and the Uniform Commercial Code a sales contract not in writing is not unenforceable if there is a memorandum *294 of the agreement in writing signed by the party to be charged or his authorized agent. Although the Uniform Sales Act was silent as to the required terms for a satisfactory memorandum, the courts in New Jersey had restrictively interpreted "memorandum" to mean a writing containing the full terms of the contract. See Bauer v. Victory Catering Co., 101 N.J.L. 364, 370 (E. & A. 1925). N.J.S.A. 12A:2-201(1), in stating, with the exception of the quantity term, that "A writing is not insufficient because it omits or incorrectly states a term agreed upon * * *," clearly changes the law in New Jersey as to the requirements of the memorandum exception to the statute of frauds. As evidenced by the Uniform Commercial Code Comment to § 12A:2-201, par. 1, such a change was clearly intended:
The required writing need not contain all the material terms of the contract and such material terms as are stated need not be precisely stated. All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction. * * * The price, time and place of payment or delivery, the general quality of the goods, or any particular warranties may all be omitted.

* * * * * * * *
Only three definite and invariable requirements as to the memorandum are made by this subsection. First, it must evidence a contract for the sale of goods; second, it must be `signed,' a word which includes any authentication which identifies the party to be charged; and third, it must specify a quantity.
In holding that the check in the present litigation sufficiently satisfies the requirements of N.J.S.A. 12A:2-201 (1) to constitute a memorandum of the agreement, this court is not without judicial authority. In Herzog v. Tidaback, 67 N.J. Super. 14 (Ch. Div. 1961), the court took a half step in such a direction. There the court held that where a purchaser of real estate gave the seller's agent a check which bore the notation that it was a deposit on specific premises in accordance with a listing agreement, and where the seller's agent accepted, endorsed and cashed said check, the notation together with the endorsement of seller's authorized *295 agent would be sufficient to satisfy the requirements of the statute of frauds. Thus, in order for a check to satisfy the memorandum exception, Herzog required that an outside agreement be incorporated by reference. But this distinction is due to the fact that the sale in Herzog involved real estate rather than goods, as in the present case. This distinction between a contract for the sale of land which requires that a check refer to a written agreement, and a contract for the sale of goods which does not require incorporation by reference on a check, has been clearly drawn. See 20 A.L.R. 363; 153 A.L.R. 1112. The decisions under the Uniform Commercial Code involving a contract for the sale of goods are to the effect that a check alone is sufficient to constitute a writing in compliance with the statute of frauds. See Mason v. Blayton, 119 Ga. App. 203, 166 S.E. 2d 601 (Ct. App. 1969); Torreggiani v. Coffee of Columbia, Inc. 49 Misc.2d 785, 268 N.Y.S.2d 649 (N.Y. City Civ. Ct. 1965).
Accordingly, this court concludes that by the adoption of the Uniform Commercial Code in New Jersey, the case law concerning the sufficiency of memorandum has been changed. It therefore appears to the satisfaction of this court that the check in the case at bar satisfies the requirements of N.J.S.A. 12A:2-201 (1) and thereby renders the contract enforceable under the statute of frauds.
Had the check not satisfied the requirements of N.J.S.A. 12A:2-201(1), the check, together with defendant's admission of a contract in his depositions and demands for admission, may satisfy N.J.S.A. 12A:2-201 (3) (b). This subsection states, in effect, that where the requirements of 12A:2-201(1) have not been satisfied, an otherwise valid contract will be held enforceable if the party charged admits that a contract was made. Such a contract would be enforceable only with respect to the quantity of goods admitted.
The New Jersey Study Comment to § 12A:2-201, par. 7, points out that "The cases from other states are in disagreement on the question of giving effect to admissions in court *296 for purposes of satisfying the statute of frauds." See Padgham v. Wilson Music Co., 3 Wis.2d 363, 88 N.W.2d 679 (Sup. Ct. 1958); Zlotziver v. Zlotziver, 355 Pa. 299, 49 A.2d 779 (Sup. Ct. 1946). The theory behind the dissention under § 2-201(3)(b) seems to be that "* * * the defendant should be privileged not to make the admission if it has the legal effect of depriving him of the defense of the Statute of Frauds." Hawkland, Sales and Bulk Sales, 31 (1958).
This court is of the opinion that if a party admits an oral contract, he should be held bound to his bargain. The statute of frauds was not designed to protect a party who made an oral contract, but rather to aid a party who did not make a contract, though one is claimed to have been made orally with him. This court would therefore hold that the check, together with defendant's admission of an oral contract, would constitute an enforceable contract under N.J.S.A. 12A:2-201(3)(b).
Finally, under N.J.S.A. 12A:201(3) (c) the check may constitute partial performance of the contract in that payment for goods was made and accepted, and, as such, the contract would be held enforceable under the statute of frauds. N.J.S.A. 12A:2-201(3) (c) provides that although the requirements of N.J.S.A. 12A:2-201(1) have not been met, an otherwise valid contract will be held enforceable with respect to goods (1) for which payment has been made and accepted, or (2) which have been received and accepted.
As noted in the New Jersey Study Comment to § 2-201, par. 8, this subsection partially changes New Jersey case law which held that either part payment or the actual receipt and acceptance of part of the goods satisfies the statute of frauds for the entire contract. See Field and Field v. Runk, 22 N.J.L. 525 (Sup. Ct. 1850); Leslie v. Casey, 59 N.J.L. 6 (Sup. Ct. 1896). Under the Code oral contracts would be held enforceable only to the extent that goods have been paid for or received. Thus, part payment or receipt and acceptance of part of the goods would satisfy the statute of *297 frauds, not for the entire contract, but only for the quantity of goods which have been received and accepted or for which payment has been made and accepted.
In the present case, since the quantity term has been clearly indicated by the check itself, namely "aux. sloop, D'Arc Wind," the check, by representing that payment had been made and accepted, would constitute partial performance and the contract would be held enforceable under N.J.S.A. 12A:2-201(3) (c). That such a decision results in upholding the entire contract is due solely to the fact that the entire contract concerned only the sale of one boat.
The fact that defendant had stopped payment on the check is of no legal significance. As stated by Professor Corbin, "The requirements of the statute [of frauds] are satisfied even though the drawer of the check causes its dishonor by stopping payment; the oral contract is still enforceable and the holder can maintain suit against the drawer for the amount of the check." Corbin on Contracts, § 495 (1950). The Uniform Commercial Code takes the same view in N.J.S.A. 12A:3-802(1) (b): "If the instrument is dishonored action may be maintained on either the instrument or the obligation." Thus, a subsequent stop-payment order has no bearing on whether or not an enforceable contract came into being upon the delivery and acceptance of the check.
In sum, the case at bar has fully complied with the statute of frauds in that under each of the alternative subsections  N.J.S.A. 12A:2-201(1), (3) (b), and (3) (c)  the enforceability of the contract is upheld.
The time and place for performance of the contract is not in dispute: both parties agree that final payment was to be made on May 25, 1968 at the boat yard where plaintiff's sloop was stored. N.J.S.A. 12A:2-507(1) requires tender of delivery as a condition to seller's right to payment according to the contract. It appears from the facts that plaintiff seller complied with N.J.S.A. 12A:2-507(1) in tendering delivery, since he was ready, willing and able to close the *298 deal. Defendant buyer's failure to rightfully reject under N.J.S.A. 12A:2-601 and 2-602 or to accept under N.J.S.A. 12A:2-606 constituted a breach of the contract.
Under N.J.S.A. 12A:2-706 the seller may resell the goods and recover from the defaulting buyer the difference between the contract price and the resale price, together with incidental damages allowed by N.J.S.A. 12A:2-710, but less any expense saved in consequence of the buyer's breach. The resale must be made in good faith and in a commercially reasonable manner with reasonable notification of the resale to the defaulting buyer. "Incidental damages are additional expenses reasonably incurred by the aggrieved party by reason of the breach. They would include resale charges, storage charges, notice charges and the like." New Jersey Study Comment to § 12A:2-710.
By letter of May 27, 1968 plaintiff notified defendant of his intention to resell the boat. Plaintiff then re-advertised the boat in the New York Times and accepted the highest offer of $3,000 in early June. This court holds such a sale to have been conducted in good faith and in a commercially reasonable manner which, together with the fact of notice to the defendant, satisfies the requirements of N.J.S.A. 12A:2-706.
By reason of the foregoing, this court hereby grants plaintiff's motion for summary judgment against defendant for breach of contract and awards damages in the amount of $1,679.50 representing resale damages under N.J.S.A. 12A:2-706 of $1,650 and incidental damages under N.J.S.A. 12A:2-710 of $29.50.
Present order accordingly.