**McCUBBIN SEED FARM, INC.,**
Appellee,

v.

**TRI–MOR SALES, INC., Appellant.**

No. 2–59147.

Supreme Court of Iowa.

Aug. 31, 1977.

Grefe & Sidney by Claude H. Freeman and Stephen D. Hardy, Des Moines, for appellants.

Mote, Wilson & Welp by Roger E. Harrison, Marshalltown, for appellee.

Heard by MOORE, C. J., and MASON, LeGRAND, REES, and UHLENHOPP, JJ.

UHLENHOPP, Justice.

This is an appeal from summary judgment for plaintiff McCubbin Seed Farm, Inc., in an action on an alleged contract for the sale by McCubbin of seed beans to defendant Tri-Mor Sales, Inc. Both parties are merchants.

As customary, McCubbin telephoned Tri-Mor on several occasions to inform it of the current market price of soybean seed and to inquire about Tri-Mor's requirements for the coming planting season. The parties disagree as to the intended effect of these conversations.

Immediately after each conversation, McCubbin sent Tri-Mor written confirmation of the price and quantity of beans discussed. The confirmations totaled 1000 bushels. Tri-Mor made no response to the confirmations but admitted receiving at least some of them. Subsequently McCub-bin attempted to deliver to Tri-Mor 1000 bushels of soybean seed. Tri-Mor accepted and paid for 500 bushels but rejected and refused to pay for more.

McCubbin filed suit against Tri-Mor, alleging that through the parties' telephone conversations and the subsequent confirmations, Tri-Mor purchased 1000 bushels. It further alleged that Tri-Mor breached the contract by refusing to accept 500 bushels of seed and that as a result McCubbin suffered damages of $1600. By answer, Tri-Mor denied having contracted for 1000 bushels.

McCubbin filed a motion for summary judgment supported by the affidavit of its president. In the motion it asserted that both parties were merchants, that it promptly sent and Tri-Mor received confirmations of the transactions, and "that pursuant to Section 554.2201(2) of the 1975 Code of Iowa, the receipt of said confirmation and the failure of defendant to serve written notice of objection to its contents constitutes a contract of purchase."

Tri-Mor filed a resistance to the motion averring "there exists a genuine issue of material fact as to whether there existed at any time a contract of purchase for any of the products as alleged in plaintiff's Petition." Tri-Mor further averred "Section 554.2201(2) of the Code of Iowa does not relieve the plaintiff of the burden of establishing the existence of a contract. . . ." An affidavit of Tri-Mor's president, Robert Cutshall, accompanied the resistance. In his affidavit Cutshall stated inter alia:

I further state that pursuant to the longstanding practice and course of dealing between the McCubbin Seed Farm, Inc., and Tri-Mor Sales, Inc., all initial contact, discussions or negotiations between the said parties, including those purportedly described in written communications, were intended to be and were in fact treated as though they were preliminary to any binding transaction, and were subject to cancellation, revocation, substitution, or other alteration by either of said parties at any time prior to a confirmation which was intended to be

binding which was agreed to by both of said parties.

The trial court held a hearing on the motion on November 18, 1975, and received testimony. At the conclusion of the hearing the court indicated there was "clear evidence that a contract was entered into for the sale by the plaintiff to the defendant of the thousand bushels of beans" and Tri-Mor had failed to controvert the contract or raise any material questions of fact. The court stated that "for these reasons the Court is going to sustain the Plaintiff's Motion for Summary Judgment and direct that the counsel for the plaintiff prepare a formal judgment entry in accordance with the terms thereof for a judgment for the amount prayed in the Petition and as shown by the Motion for Summary Judgment, that [is] $1,600 plus interest and costs, as provided by law." The court also made the following calendar entry at the conclusion of the hearing: "Plaintiff's motion for summary judgment sustained for reasons dictated in record. Judgment as per entry signed."

Accordingly, a five-page written judgment was prepared, stating in the final paragraph: "That Summary Judgment be and the same is hereby granted in favor of Plaintiff and against Defendant in the amount of One Thousand Six Hundred and 00/100 Dollars with interest thereon from and after the date hereof at the rate of seven percent per annum and for all the costs of this action." The judgment bore the date November 18, 1975. The date the trial court signed it does not appear; McCubbin's brief states this was November 25, 1975. The judgment was filed on November 25, 1975.

Twenty-four days later, on December 19, 1975, Tri-Mor filed notice of appeal.

I. McCubbin maintains Tri-Mor did not timely perfect its appeal because Tri-Mor filed its notice of appeal 31 days after November 18, 1975, beyond the 30-day limit in rule 335(a) of the Rules of Civil Procedure.

■ A denial of summary judgment is interlocutory, but a grant of summary judgment is appealable. *Swets Motor Sales, Inc. v. Pruisner,* 236 N.W.2d 299 (Iowa); *Flynn v. Lucas County Memorial Hosp.,* 203 N.W.2d 613 (Iowa). When did the trial court grant summary judgment, on November 18 or 25, 1975?

■ This court stated in *Whittier v. Whittier,* 237 Iowa 655, 662, 23 N.W.2d 435, 440:

> The sufficiency of a writing claimed to be a judgment is to be tested by its substance rather than its form. If it corresponds with the definition of a judgment and appears to have been intended by the court as a determination of the rights of the parties, and shows in intelligible language the relief granted, the absence of language commonly deemed especially appropriate to final judgments is not fatal.

■ Under the statement from *Whittier,* we think that the trial court regarded the written judgment filed November 25 as the judgment, and that such written judgment *is* the judgment. The *Swets* and *Flynn* situations were different. There the trial courts initially entered full and final rulings which appeared to be the judgments.

■ The controlling date, for appeal purposes, is not the date the judgment bears or the date the trial court signed it, but rather the subsequent date the judgment was entered. This follows from rules 120, 227, and 335(a), R.C.P. See *Moreno v. Vietor,* 261 Iowa 806, 156 N.W.2d 305. In this case we do not have an unrecorded judgment problem, under rule 335(b).

■ We hold that Tri-Mor's notice of appeal was timely.

II. Summary judgment is appropriate when no genuine issue of fact exists. "In ruling on a motion for summary judgment, the court's function is to determine whether such a genuine issue exists, not to decide the merits of one which does." *Bauer v. Stern Finance Co.,* 169 N.W.2d 850, 853 (Iowa). The burden of showing no genuine issue of fact exists is upon the party moving for summary judgment, here, McCubbin. In determining whether the burden

has been met, we view all material properly before the court in the light most favorable to the opponent, here, Tri-Mor. *Sand Seed Service, Inc. v. Poeckes,* 249 N.W.2d 663, 664 (Iowa); *Daboll v. Hoden,* 222 N.W.2d 727, 731 (Iowa).

McCubbin claims the affidavit of its president established that the telephone discussions resulted in orders by Tri-Mor and that the confirmations created a contract.

Tri-Mor contends the affidavit and testimony of its president showed the telephone conversations constituted preliminary negotiations. It argues the parties intended that the discussions and subsequent confirmations were not binding and that a contract was not to exist until some later confirmation took place. It stated in its resistance that this disagreement constituted a question for the trier of fact and that summary judgment was therefore inappropriate.

The trial court rejected Tri-Mor's argument, relying on § 554.2201(2), Code 1975. The court indicated that McCubbin's sending of the written confirmation triggered § 554.2201(2) and that Tri-Mor's failure to respond resulted in "a contract for sale."

Section 554.2201 provides in pertinent part:

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. . . .

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

Section 554.2201(2) does not itself make a confirmation into a contract. Rather, a written confirmation, followed by the recipient's failure to respond, negates the defense of the statute of frauds, between merchants.

The meaning of § 554.2201 is discussed in [1977] 3 Bender's Uniform Commercial Code Service, § 2.04[2] at 2–73:

It is on this point, namely, that by failing to respond he must bear the risk of his adversary's ability to establish a contract, that an appalling number of courts have failed to understand the impact of silence on the part of the merchant receiving a confirmatory memorandum. Several cases have misinterpreted the special merchant rule of subsection (2) of Section 2–201 by reading into it a meaning which was not intended. Nothing in the section makes a written confirmation binding on either party, simply because it is not responded to. The only effect of no response is to deny the use of the statute of frauds. This is made abundantly clear in Official Comment 3 to Section 2–201, where it is written that "The only effect, however, is to take away from the party who fails to answer the defense of the Statute of Frauds; the burden of persuading the trier of fact that a contract was in fact made orally prior to the written confirmation is unaffected." In fact, this is true of any memorandum under the statute, whether or not the special rule for merchants is applicable. Simply because a memorandum is sufficient against the party who signs it, or against its recipient under the rule for merchants does not mean that the party against whom it operates is necessarily bound to an enforceable obligation. To be sure, the writing may be very useful evidence against its author, or against its recipient under the merchant rule; but the contract must nonetheless be proved by the one alleging it.

See also 1 Anderson, Uniform Commercial Code, § 2–201:53 at 285 (2d Ed.).

Numerous cases involve this point; they reach conflicting results. We deem the proper rule to be that although § 554.-

2201(2) will take from the recipient the defense of the statute of frauds, the party claiming a contract must prove it. To hold otherwise would allow a party to create a contract by merely sending a confirmation to another party irrespective of the fact as to the existence of a contract. Decisions which we believe apply the proper rule include *Automotive Spares Co. v. Archer Bearings Co.,* 382 F.Supp. 513 (N.D.Ill.); *Sierens v. Clausen,* 60 Ill.2d 585, 328 N.E.2d 559; *American Parts Co., Inc. v. American Arbitration Ass'n,* 8 Mich.App. 156, 154 N.W.2d 5; *Azevedo v. Minister,* 86 Nev. 576, 471 P.2d 661; *Tripp v. Pay N' Pak Stores, Inc.,* 268 Or. 1, 518 P.2d 1298; *Harry Rubin & Sons, Inc. v. Consolidated Pipe Co.,* 396 Pa. 506, 153 A.2d 472; *Nelson v. Union Equity Co–Operative Exch.,* 548 S.W.2d 352 (Tex.).

By the affidavit of Tri-Mor's president, swearing to facts showing that the discussions and confirmations constituted negotiations and not contracts, Tri-Mor raised a material question for the fact finder. The trial court should not have granted summary judgment. The confirmations negate the defense of the statute of frauds, if a contract existed, but they do not as a matter of law satisfy McCubbin's burden to show a contract arose. The confirmations and Tri-Mor's failure to respond may of course be shown at trial as part of the evidence on whether the parties made a contract, but Tri-Mor is entitled to trial on that issue.

REVERSED.