**PACKWOOD ELEVATOR COMPANY,**
Appellee,

v.

**David R. HEISDORFFER, Appellant.**

No. 59295.

Supreme Court of Iowa.

Dec. 21, 1977.

Bailey C. Webber of Webber & Gaumer, Ottumwa, for appellant.

Gary L. Cameron of Parkin & Cameron, Fairfield, for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and HARRIS, JJ.

MOORE, Chief Justice.

Defendant-farmer appeals judgment entered in favor of plaintiff-elevator for breach of an oral contract for the sale of soybeans. We affirm.

In a telephone conversation on January 31, 1973, defendant Heisdorffer, after receiving price quotations from Dale Sullivan, plaintiff's manager, that the elevator would pay $4.72 per bushel for soybeans picked up at his farm, agreed to sell 5900 bushels for that price. No written confirmation was ever made of this agreement.

There was no further contact between the parties until February 22 when Mr. Sullivan called and tried to arrange to pick up the soybeans. Defendant refused to make delivery stating the contract expired 14 days from the date of the contract as originally agreed. The elevator disagreed declaring the contract was to run through the month of February. On February 24, Sullivan and one of his employees, Gary Benell, went to defendant's farm to take delivery but to no avail.

As a result of the disagreement the elevator was forced to "cover" the contract with

other purchases at approximately $6.145 per bushel (market price on 2/22/73) from another producer in order to mitigate damages and also honor its own contracts with large soybean dealers.

Thereafter plaintiff initiated this lawsuit for breach of contract. Defendant answered by way of denial and raised as an affirmative defense the Iowa Uniform Commercial Code statute of frauds, section 554.-2201(1).

The case then proceeded to trial. Defendant, called as an adverse witness, testified that there was an oral agreement for sale of soybeans but that he had imposed a 14-day time limit for the elevator to pick up the produce because he needed cash to pay on various note obligations. Mr. Sullivan was then called to testify regarding the terms of the oral agreement and its breach by defendant and the resulting damages. Defendant objected to his testimony concerning the telephone call on the ground that the statute of frauds made the party seeking enforcement of the contract incompetent to testify to any provision of the contract. Trial court overruled the objection and Sullivan then testified he told Mr. Heisdorffer he would take delivery within the "30-day" period as in all contracts.

Defendant's evidence was limited to his testimony and that of his spouse. Both testified there was an agreement to sell the beans but it expired at the end of 14 days prior to the time plaintiff sought to take delivery. The main thrust of their side of the controversy was that the contract did exist at one point in time but that it had terminated by its own terms prior to any alleged breach on their part. On cross-examination there was evidence the rising bean prices were a benefit to defendant who was ultimately able to sell the beans to another elevator in May for $7.48 per bushel.

Trial court in its findings and conclusions found that since the contract was oral and involved a sales price of over $500, section 554.2201 applied. However, it concluded that once defendant admitted the January 31 agreement, the defense of statute of frauds was no longer available under section 554.2201(3)(b). On the specific issue of time for delivery the court found the defendant's failure to pay off his notes combined with the skyrocketing bean prices and conflicting testimony from Mr. Sullivan rendered defendant's claim of a two-week delivery period "incredible." Accordingly the court found defendant had breached the contract and awarded damages in the amount of $8,407.50 which reflected the difference between the contract price and the market price of $6.145 per bushel at the time of the breach.

Defendant appeals asserting that trial court erred in permitting plaintiff's manager to testify in violation of the statute of frauds and that there was no substantial evidence supporting the finding that the oral agreement contained a 30-day delivery term.

■ I. We review this law action on errors assigned. Findings of fact by the trial court have the effect of a special verdict and if supported by substantial evidence they are binding on us and will not be disturbed. Furthermore, we view the evidence in a light most favorable to the judgment and in case of ambiguity construe to uphold rather than defeat the judgment. *Pillsbury Co. v. Ward*, Iowa, 250 N.W.2d 35, 38; *Holm v. Hansen*, Iowa, 248 N.W.2d 503, 505. However, these principles do not preclude inquiry into whether trial court applied erroneous rules of law which materially affected its decree. We are not bound by trial court determinations of law. *Nora Springs Co-op Co. v. Brandau*, Iowa, 247 N.W.2d 744, 747; *Sand Seed Service, Inc. v. Bainbridge*, Iowa, 246 N.W.2d 911, 912.

■ II. Defendant raised the statute of frauds defense under the Uniform Commercial Code, section 554.2201 as an affirmative defense in his answer and later as grounds for his objection to Dale Sullivan's testimony. That statute provides:

"554.2201 Formal requirements—statute of fraud.

"1. Except as otherwise provided in this section a contract for the sale of

goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

"2. Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

"3. *A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable*

"a. if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

"b. *if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted* ; or

"c. with respect to goods for which payment has been made and accepted or which have been received and accepted. (Emphasis supplied.)

This case turns on whether the statute of frauds defense was still available to defendant after he admitted an oral agreement was reached on January 31, 1973. Our reso-

lution of this issue requires some examination of the purpose behind the code admission provision.

Prefatorily, we note the factual pattern presented here is scarcely unique to this lawsuit. It arises often because of the manner in which corn and soybeans are normally bought and sold over the telephone with the elevator-buyer later sending a written confirmation to the farmer-seller. When this informal system is combined with potentially significant fluctuations in market conditions between the time crops are contracted for and later delivery dates as occurred throughout 1973, the field is ripe for litigation over whether an enforceable agreement existed because no formal writing was executed.

Recently we have discussed the merchant provision, section 554.2201(2) in two separate cases. In *Sand Seed Service, Inc. v. Poeckes*, Iowa, 249 N.W.2d 663, we held whether a farmer is a merchant for purposes of this exception is ordinarily a question of fact. However, there we sustained trial court's ruling sustaining a summary judgment in the farmer's favor because under the uncontroverted facts from the farmer's affidavit it was clear he was not a merchant as a matter of law.

Shortly thereafter in *McCubbin Seed Farm, Inc. v. Tri-Mor Sales*, Iowa, 257 N.W.2d 55, we construed the section further and held a merchant's silence after receipt of a confirmation has the effect of negating the statute of frauds defense; however, the party claiming a contract must still prove it. To hold otherwise would have permitted a party to create a contract by merely sending a confirmation irrespective of the intent of the parties.

The purpose of the admission provision instantly disputed is explained in Comment 7 to this section in the Uniform Commercial Code found at Vol. 35, page 148, Iowa Code Annotated. It provides:

"7. If the making of a contract is admitted in court, either in a written pleading, by stipulation or by oral statement before the court, no additional writing is necessary for protection against

fraud. Under this section it is no longer possible to admit the contract in court and still treat the Statute as a defense. However, the contract is not thus conclusively established. The admission so made by a party is itself evidential against him of the truth of the facts so admitted and of nothing more; *as against the other party*, it is not evidential at all." (Emphasis supplied.)

Although several other jurisdictions have discussed this expansion of the traditional exceptions to the statute of frauds none have done so more forcefully than the Maine Supreme Court. In *Dehahn v. Innes*, Me., 356 A.2d 711, 717, the court stated:

"By this change in the statute of frauds, the Legislature had in mind to expand the exceptions to the statutory rule of nonenforceability concerning oral agreements relating to the sale of goods. Although limited in scope, this provision of the Code was intended to deny the benefit of the statute of frauds to one who in court, whether by pleading, testimony or otherwise, admits the existence of the oral contract sued upon. The ultimate design of this legislation is to limit the use of the statute of frauds as a shield against unfounded fraudulent claims resting in parol, while removing from the arsenal of an unscrupulous litigant an unrighteous defense against a just claim."

See also *Farmers Elevator Co. of Reserve v. Anderson*, Mont., 552 P.2d 63, 65; *Cohn v. Fisher*, 118 N.J.Super. 286, 296, 287 A.2d 222, 227; *Garrison v. Piatt*, 113 Ga.App. 94, 147 S.E.2d 374.

Among the code commentators, we think this comment from White and Summers, Uniform Commercial Code Handbook, sec. 2–5 at 57, best summarizes the intent of this section:

" * * * . Certainly it makes an open mockery of the statute to permit the defendant to use the statute effectively as a defense, yet in pleadings or in open court admit a contract! * * * ."

In light of this purpose we were one of the first jurisdictions to hold that a defendant's involuntary admissions made in open court are sufficient to trigger operation of the admission exception. *Quad County Grain, Inc. v. Poe*, Iowa, 202 N.W.2d 118, 119, 120. Thus, in the present case, defendant's testimony both as an adverse witness called by plaintiff and as a witness in his own behalf, provided substantial evidence to support trial court's findings that the exception applied.

Subsequent to *Quad County Grain, Inc. v. Poe*, supra, other courts have held that similar in-court admissions are sufficient to vitiate a claimed statute of frauds defense. See *Jurek v. Thompson*, Minn., 241 N.W.2d 788, 793. This is the case even though the party denying existence of a contract and relying on the statute of fraud defense takes the stand and, without explicitly admitting an oral contract was formed, nonetheless testifies to facts which clearly show one was made.

In *Cargill Inc., Commodity Marketing Div. v. Hale*, Mo.App., 537 S.W.2d 667, plaintiff-elevator sued defendant-farmer for breach of contract to sell 9000 bushels of soybeans. Because the business was transacted by way of telephone followed up by written confirmation, defendant, as in the instant case, raised the statute of frauds as a defense. The Missouri Court of Appeals held the following testimony of defendant elicited on cross-examination constituted an admission within the meaning of 2201(3)(b) at 669:

"Q. Didn't you agree to sell these beans to [plaintiff's manager] over the phone for a certain price?

"A. Yes, sir."

In *Lewis v. Hughes*, 276 Md. 247, 346 A.2d 231, the Maryland Court of Appeals held that although the defendant never explicitly admitted a contract was made, his testimony taken as a whole clearly manifested an objective assent to the offer to purchase. There the parties really only disagreed on the actual method of payment not on whether an agreement had been reached. Other cases are listed in a recent comprehensive law review article on this subject in Yonge, 33 Washington and Lee

Law Rev. 1, "The Unheralded Demise of the Statute of Frauds Welsher in Oral Contracts for the Sale of Goods and Investment Securities: Oral Sales Contracts are Enforceable by Involuntary Admissions in Court Under U.C.C. Sections 2–201(3)(b) and 8–319(d)."

We believe the present controversy presents a stronger case for application of the admission exception to the statute of frauds than those cited above. Here the defendant agreed with plaintiff-manager's testimony that the parties had entered into an oral contract on January 31, 1973 in which defendant could sell 5900 bushels of soybeans to plaintiff at the price of $4.72 per bushel. The only dispute is over the length of time for delivery not in whether a valid contract was in existence.

From the foregoing it is manifest defendant's claim to a statute of frauds defense is without merit. Once he had admitted the oral agreement of January 31, it remained for plaintiff, the party urging enforcement of that agreement to present evidence in proof of its existence. *Dangerfield v. Markel*, N.D., 252 N.W.2d 184, 190; 3 Bender's Uniform Commercial Code Service, section 2.04[3] at 2–80, 2–81; Cf. *McCubbin Seed Farm, Inc. v. Tri-Mor Sales*, supra, 257 N.W.2d at 58, 59.

Trial court properly overruled defendant's objection based on the Iowa Uniform Commercial Code, section 554.2201(3)(b) and permitted Sullivan to testify as to his understanding of the delivery term. The weight to be given either interpretation is for the fact finder. *Oskey Gasoline & Oil Co., Inc. v. Continental Oil*, 8 Cir., 534 F.2d 1281, 1285.

III. It follows from our prior discussion that no writing was required for enforcement of the contract. However, in order for plaintiff to prevail we still must find substantial evidence in the record to support trial court's finding that the delivery condition was 30 days rather than two weeks as defendant asserts.

Under our limited scope of review we believe there is substantial evidence supporting trial court's conclusion the delivery term was 30 days rather than two weeks. Although the evidence was otherwise close, trial court was most persuaded by the inconsistency of defendant's testimony regarding various note obligations. Defendant offered evidence that he sorely needed cash to pay off certain notes before the end of February. However, rather than delivering his beans to plaintiff and obtaining sufficient funds to satisfy his note obligations, he elected to renew them. The reason for this decision was clear to the trial court. As a result of the soaring soybean market he was later able to sell his crop to another elevator for $7.48 per bushel, almost $3 more than the price contracted with plaintiff.

Defendant-appellant has failed to establish any reversible error.

AFFIRMED.