Argued and submitted February 15, affirmed October 31, reconsideration denied December 21, 1984, petition for review denied February 12, 1985 (298 Or 704)

## COURT OF APPEALS OF THE STATE OF OREGON

NELSON et al,
*Appellants,*

*v.*

BROSTOFF,
*Respondent.*

(A8209-05728; CA A26783)

689 P2d 1056

John S. Folawn, Portland, argued the cause for appellants. With him on the briefs were Lee S. Aronson, and Holmes, DeFrancq & Schulte, P. C., Portland.

James N. Westwood, Portland, argued the cause for respondent. With him on the brief were John F. Neupert, and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

Newman, J., dissenting.

## RICHARDSON, P. J.

Plaintiffs brought this action to specifically enforce a contract whereby defendant purportedly agreed to sell all of the stock of Rico's Red Lion Pizza Parlors, Inc., to plaintiffs. Defendant moved for summary judgment on the ground that the alleged contract violated the "applicable statutes of fraud [sic]." The trial court granted the motion, plaintiffs appeal and we affirm.

After the parties reached some level of preliminary agreement in late August or early September, 1982, defendant's attorney drafted a proposed written purchase and sale agreement. It provided that defendant would sell and plaintiffs would purchase 102 shares of Rico's for a price of $950,000. It also contained a provision relating to the future lease to Rico's of property owned by defendant. For reasons that are not material to our discussion, plaintiffs found the proposed contract unacceptable. On September 13, 1982, the parties had a meeting to discuss the matter, followed by a meeting that afternoon among plaintiff Nelson, defendant and defendant's accountant, Eastern. At that meeting and, apparently, at earlier phases of the negotiations, Eastern acted as defendant's adviser and spokesman. During the meeting, he prepared a handwritten document on a piece of memorandum paper. It reads:

"1.  Prepayment penalty.

"2.  November 15

"3.  Standard sellers warranties

"4.  Stock of Rico's or securities not both.

"5.  Default—work out Don DeFrancq.[1]

"6.  Any moneys due corporation by [defendant] payable one year."

Nelson signed that document, and Eastern initialed it. Plaintiffs argued and introduced some evidence to show that each of the notations on Eastern's writing refers to a topic about which agreement was reached at the meeting. Plaintiffs rely in particular on the deposition of defendant, whose testimony was to the effect that there was consensus

---

[1]Eastern's affidavit explains that DeFrancq is plaintiff Nelson's attorney.

among him, Eastern and Nelson about *some* of the matters synopsized by Eastern's notations. Defendant also testified that, after Nelson signed and Eastern initialed the document, defendant said to Nelson, "We've got a deal." The "deal" never advanced beyond that level of formalization, and defendant later sold Rico's to a different purchaser, who had offered a higher price.

Plaintiffs rely on ORS 78.3190(1) and (4),[2] which provide:

"A contract for the sale of securities is not enforceable by way of action or defense unless:

"(1)   There is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or

"* * * * *

"(4)   The party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price."

Although plaintiffs do not dispute that there was no *single signed* writing containing the elements specified by ORS 78.3190(1), they nevertheless argue that there was an enforceable agreement under that statute. Their theory is that evidence in the summary judgment proceeding would support findings that (a) Eastern was defendant's agent; (b) he initialed the document he prepared at the September 13 meeting;

---

[2] Defendant argues, and the trial court apparently agreed, that the lease provision in the proposed contract makes ORS 41.580 the relevant Statute of Frauds. Plaintiffs respond that ORS 41.580 is not applicable at all but that, if it does apply to the lease provision, the stock sale provisions are severable from the lease provision and are subject to ORS 78.3190. Defendant disagrees with plaintiffs' severability argument. We do not. Plaintiffs do *not* argue that ORS 41.580(5) and (6) would not bar enforcement of the lease provision of the proposed contract if those subsections were applicable. Plaintiffs do argue, as an alternative to their contention that ORS 41.580 has no bearing on the case, that the agreement is taken out of the statute because defendant ratified his agent Eastern's purported agreement. We do not agree with that argument. Accordingly, plaintiffs place no meritorious reliance on ORS 41.580. Nothing in the text of this opinion is intended as a comment on whether ORS 41.580 rather than ORS 78.3190 applies to any part of the alleged agreement. *Compare Ralston v. Spoor*, 39 Or App 883, 593 P2d 1285, *rev den* 287 Or 149 (1979).

(c) that document was connected with the proposed contract and referred to the same transaction; (d) the proposed contract meets all of the requirements of ORS 78.3190(1) other than the requirement that it be signed by defendant or his agent; and (e) Eastern's initials on the other document satisfy the signature requirement of the statute.[3]

Plaintiffs rely principally on *Haspray v. Pasarelli,* 79 Nev 203, 380 P2d 919 (1963). In that case, there were two writings, one signed and the other not. The signed writing in itself did not contain all of the elements necessary to satisfy the Statute of Frauds, but the second supplied the missing ones. The Nevada Supreme Court reversed the trial court's summary judgment for the defendant who asserted the Statute of Frauds defense and held:

> "Two separate writings may be sufficiently connected by internal evidence without any express words of reference of one to the other. That they refer to the same transaction and state the terms thereof may appear from the character of the subject matter and from the nature of the terms. 2 Corbin, Contracts § 514.

> "All of the essential terms of the oral agreement alleged can be found in the two written documents. If they were intended by the parties to constitute one transaction appellants should have been permitted to present evidence to show this * * *." 79 Nev at 208.

Plaintiffs also rely on *Flegel v. Dowling,* 54 Or 40, 102 P 178, 135 AS 812 (1909), as authority for the same basic principle.

Those cases are not apposite. Unlike the supplemental writings in *Haspray* and *Flegel,* Eastern's writing here contained no terms that the Statute of Frauds requires; correspondingly, unlike the underlying instruments in *Haspray* and *Flegel,* the proposed contract *did* contain all of the terms required by the statute. The only problem with the proposed contract is that, unlike the underlying instruments in *Haspray* and *Flegel,* it was not subscribed by the party to be charged or his agent.

The most relevant Oregon authority we find, *Hanks et ux v. Baillie,* 229 Or 160, 367 P2d 359 (1961), is not cited by

---

[3] We assume for purposes of this opinion that initialing a document in the manner Eastern did *could* satisfy the "signed" element of ORS 78.3190(1).

the parties. The plaintiffs-buyers in that case sought to have an earnest money receipt construed together with other writings to take it out of the Statute of Frauds. The receipt had not been signed by the defendant-seller and, standing alone, it suffered from other deficiencies that rendered it unenforceable under ORS 41.580. One of the secondary documents on which the plaintiffs relied, exhibit 1, was a page of notes the defendant wrote and signed while discussing the terms of the contemplated sale with the plaintiffs. In affirming the trial court's judgment of involuntary nonsuit, the Supreme Court said:

> "Plaintiffs' position rests heavily upon the idea that Exhibit 1 purported to be a contractual instrument memorializing, at least in part, the agreement of the parties. However, the exhibit does not contain any promissory language, a description of the property, the designation of the contracting parties, or any indication that plaintiffs are bound to purchase the property. The position of defendant's signature on the sheet in relation to the other notations suggests that his name was written not as a signature to bind him to a bargain but simply to record his name and address for plaintiffs' convenience.

> "We believe that it is eminently clear that the writings preceding the partial execution of the earnest money receipt were not intended by the parties to be binding upon them and that it was contemplated that some more formal writing would eventually memorialize the final agreement. * * *" 229 Or at 165.[4]

■ Reduced to essentials, plaintiffs' argument is that Eastern's initials on a page of notes that is devoid of any reference to any term the applicable statute makes a prerequisite to enforcement can render enforceable *another* writing that was obviously drafted to embody the entire agreement of the parties, that does contain all the terms required by the statute, that defendant did not sign and that plaintiffs expressly refused to sign. We reject that argument and hold that, as a matter of law, plaintiffs produced no evidence of an agreement that can be enforced under ORS 78.3190(1).

---

[4] Although *Hanks* is an application of ORS 41.580 and *Flegel* is an application of its predecessor, the reasoning of those cases is equally germane to ORS 78.3190(1). The considerations that determine whether and how multiple writings can meet the requirements of the Statute of Frauds are the same in both contexts.

Plaintiffs argue next that defendant's deposition testimony makes the agreement enforceable under ORS 78.3190(4). Plaintiffs state that the relevant portion of defendant's deposition

"* * * culminated in his admission that after he and his agent met with Nelson and ironed out the final details of the agreement and after Nelson and Eastern signed [Eastern's writing], the defendant shook Nelson's hand and stated, 'We've got a deal.'

"* * * [T]he defendant contends that his declaration 'We've got a deal,' standing by itself, is not sufficient to satisfy the statute. However, taken in context with the preceding events described by the defendant in his deposition, it is clear that the defendant has admitted enough to satisfy ORS 78.3190(4)."[5]

We note initially that, even if defendant's deposition testimony were sufficiently specific to constitute an admission under ORS 78.3190(4), it would be questionable at best whether his testimonial recollection of a *past statement* is equivalent to an in court *admission* for purposes of the statute.[6] Defendant did not testify that there had been a "deal" made; his testimony was that he had made the statement "We've got a deal" on a previous occasion. There is of course a difference between a witness' testimony that a fact is true and the impeachment of a witness by a prior inconsistent statement that is contrary to the fact he asserts. That difference may be critical in determining whether defendant's testimony can be an admission of the kind contemplated by ORS 78.3190(4). The purpose of ORS 78.3190(4) is to permit enforcement of an unwritten agreement if the existence of the agreement and its terms are as certain as they would be if there were a writing. *See* Comment 7 to ORS 72.2010, the UCC sales statute of frauds ("If the making of a contract is *admitted in court,* either in a written pleading, by stipulation or by oral statement before the court, no additional writing is necessary for protection against fraud." (Emphasis supplied.))

---

[5] In their opening brief, plaintiffs also stated that defendant "testified that he had agreed to sell the Rico's stock to plaintiffs for $950,000." We understand plaintiffs to have withdrawn that representation *sub silentio* in their reply brief; in any event, there is nothing in the deposition to substantiate it.

[6] Defendant argues that his *deposition* testimony offered in the summary judgment proceeding did not take place *in court,* and that it therefore cannot be subject to ORS 78.3190(4). The argument is unworthy of comment.

Statutes of Frauds do not exist to permit extrinsic proof of agreements and terms of agreements that are not documented or otherwise established in the manner the statutes specify. Defendant's testimonial recollection of his statement "We've got a deal" *is* evidence that permits an inference that the parties reached an agreement; however, the question before us is not whether an agreement was reached, but whether defendant made a judicial admission of the kind required by ORS 78.3190(4) to take any agreement that might have been reached out of the Statute of Frauds. Impeachment and judicial admissions are not the same thing.

However, the parties do not base their arguments on whether defendant's was an admission at all. They focus on whether the statement "We've got a deal" was sufficiently specific under ORS 78.3190(4) to make the alleged agreement enforceable. Defendant argues that the statements in his deposition do not refer to a quantity or a price or described securities and that they therefore are not sufficient under ORS 78.3190(4) to take the alleged contract out of the Statute of Frauds. Plaintiffs argue in effect that, to take a contract out of the statute, an admission does not have to state each of the terms enumerated in ORS 78.3190(4) and that, once the party asserting the statute admits facts from which the existence of *a contract* can be inferred, the statute ceases to be a defense and proof can be offered to show that an agreement containing the statutory elements was reached.

Plaintiffs rely principally on *Gruen Industries, Inc. v. Biller,* 608 F2d 274 (7th Cir 1979), where the court interpreted the Wisconsin analog of ORS 78.3190(4). The court noted intitally:

> "Because some of the cases discussed hereinafter involved a sale of goods rather than securities, we note that the section of the Code dealing with the statute of frauds on sale of goods, Wis. Stat. § 402.201(3)(b), substantially tracks the language of § 408.319(4)." 608 F2d at 278, n 1.[7]

---

[7] *See also Tripp v. Pay'n Pak Stores, Inc.,* 268 Or 1, 4, 518 P2d 1298 (1974) (noting that ORS 78.3190 was intended as an "express correlation with the statute of frauds of the sales portion of the Uniform Commercial Code," ORS 72.2010).

In the remainder of this opinion, we will refer to UCC provisions discussed in texts and out-of-state cases by their Oregon citations. There are no material differences between the pertinent Oregon statutes and the provisions considered in those texts and cases.

It then concluded:

"* * * [A]n admission under section 408.319(4) need not expressly acknowledge the existence of a contract, nor need it describe all of its terms. *Dangerfield v. Markel,* 222 N.W.2d 373 (N.D. 1974) (applying the statute of frauds for sales of goods, section 2-201(3)(b) of the UCC). The admission need only describe conduct or circumstances from which the trier of fact can infer a contract. *Packwood Elevator Co. v. Heisdorffer,* 260 N.W.2d 543, 546 (Iowa 1977). Whether the defendants' statements admit the existence of a contract is a question of fact. *Quad County Grain, Inc. v. Poe,* 202 N.W.2d 118, 120 (Iowa 1972). Thus, summary judgment should not be granted if there is a genuine issue whether the statements admit the existence of a contract. * * *" 608 F2d at 278. (Footnote omitted.)

We disagree with that interpretation. The judicial admission described by ORS 78.3190(4) is that "a contract was made for sale of a stated quantity of described securities at a defined or stated price." That language duplicates in substance the language which ORS 78.3190(1) uses to particularize the required contents of a signed writing ("sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price"). Although subsection (1) is *at least* as facially ambiguous as subsection (4) (the latter does not contain the phrase "sufficient to indicate"), we understand the Supreme Court to have concluded in *Tripp v. Pay'n Pak Stores, Inc., supra,* n 7, 268 Or at 5-6, that writings are enforceable under subsection (1) only if they *contain* the terms enumerated in that statute and that they are not sufficient if they are only specific enough to indicate that *some agreement* was reached. We perceive no reason why the legislature's enumeration of the same contractual terms in the two subsections should be understood as creating a less specific requirement in one than the other. More fundamentally, we do not think that the legislature intended to require greater particularity for a signed writing to satisfy a Statute of Frauds than for a testimonial recollection of an oral agreement to do so. *Cf.* White and Summers, *Uniform Commercial Code* 74 § 2-8 (2d ed 1980) ("[ORS 72.2010(3)(b)] allows the fruits of courtroom cross-examination to stand *in the place of a writing.*" (Emphasis supplied.))

The court in *Gruen* relied in part on the UCC provision codified in Oregon as ORS 72.2010(3)(b) and on authority

interpreting that provision.[8] To the extent that *Gruen's* construction of ORS 78.3190(4) is really a transplanted interpretation of ORS 72.2010(3)(b), we do not now express agreement or disagreement with the Seventh Circuit's understanding of the latter.[9] However, we do note that there are differences between ORS 78.3190(4) and 72.2010(3)(b). Most notably, ORS 72.2010(3)(b) refers to a "contract for sale" but, unlike ORS 78.3190(4), it does not go on to describe the specific terms the contract must contain.[10] That distinction becomes more graphic in the light of the Oregon comment's explanation of the purpose of ORS 78.3190, which was

> "[t]o conform the statute of frauds provisions with regard to securities to the policy of the provisions in [ORS chapter 72] on sale of goods. *Requirements for minimum specification of quantity and price consistent with business practice in the securities field are added.*" (Emphasis supplied.)

Notwithstanding its contrary protestations, the dissent confuses the issue of whether an agreement was reached with the issue of whether any agreement that might have been reached is enforceable under the Statute of Frauds. The dissent would conclude that defendant's statement "We've got a deal," when considered in context, "raised a genuine issue of material fact" as to "whether defendant admitted that there was a contract for the sale of 102 shares of Rico stock for a price of $950,000." However, the only factual question to which the statement could be relevant is whether there *was* an agreement. There is no question of fact that needs to be resolved in connection with the Statute of Frauds issue. There

---

[8] ORS 72.2010(3)(b) provides that a sales agreement that would otherwise be within the statute can be enforceable

> "[i]f the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted * * *."

[9] ORS 72.2010(3)(b) has received no dispositional or other significant attention from the Oregon appellate courts so far as we find or the parties call to our attention. *See Can-Key v. Industrial Leasing,* 286 Or 173, 177, n 1, 593 P2d 1125 (1979).

[10] It does provide, however, that a judicial admission does not render a contract "enforceable * * * beyond the quantity of goods admitted." It is not clear whether that means that the admission must refer to a quantity in order to be effective under the subsection or that the admission can be effective without mentioning a quantity term but is limited to any quantity to which it *happens* to refer. We need not decide that question here.

is no dispute about what defendant said in his deposition. *But see* note 5, *supra*. The question is whether his statement was an admission under ORS 78.3190(4), and that is a pure question of law: the statute either does or does not require more specificity than defendant's statement contained.

■     In effect, the dissent's confusion of the two issues causes it to attach or ascribe terms to defendant's *admission* that the extrinsic evidence in the record shows might have been the terms of the parties' *agreement*. The dissent does not come to grips with the fact that it is a Statute of Frauds we are construing. As we noted earlier, it is simply not relevant to whether an agreement is enforceable under this or any other Statute of Frauds that the agreement's existence and terms can be proved in some manner that the statute does not allow.

■     We conclude that defendant's "admission" came no closer to satisfying ORS 78.3190(4) than Eastern's initialed notes came to satisfying ORS 78.3190(1).

Affirmed.

**NEWMAN, J.,** dissenting.

I dissent. The Statute of Frauds that governs is ORS 78.3190.[1] The majority does not disagree. Defendant's admission in his deposition that "We've got a deal" creates a genuine issue of material fact whether that statute bars plaintiffs' action.

Defendant testified at his deposition:

"Q.   Now, if you will look at the tape of Exhibit 10, there are some initials,

"A.   Uh-huh.

---

[1]ORS 78.3190 provides:

"A contract for the sale of securities is not enforceable by way of action or defense unless:

"(1)  There is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or

"* * * * *

"(4)  The party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price."

"Q. Are those Stan Eastern's initials?

"A. Yes, I believe so.

"Q. Did you see him initial the original of Exhibit 10?

"A. Yes, I saw him initial it.

"Q. And to the right of those initials, there is a writing, Roger Nelson. Is that Mr. Nelson's signature?

"A. Yes, I saw him sign that.

"Q. Did you see him date it, also, 9-13-82?

"A. I assume so.

"Q. When did Mr. Eastern initial Exhibit 10?

"A. Well, Roger Nelson signed it and then Stan Eastern initialed it.

"Q. Before Roger Nelson signed it, did you have any discussions about him signing it?

"A. No.

"Q. Do you remember at that meeting saying, 'We have a deal'?

"A. Yes.

"Q. Was that before or after Mr. Nelson signed it?

"A. I believe it was after.

"Q. Who signed it first — who initialed or signed it first, Mr. Nelson or Mr. Eastern?

"A. I think Mr. Nelson.

"Q. And then it was passed over to Mr. Eastern?

"A. Actually, I think Roger leaned over and signed it.

"Q. And then Mr. Eastern signed it?

"A. I guess so.

"Q. And then after that, is that when you said, 'We've got a deal' and shook hands?

"A. Yes."

Defendant's statement in his deposition that "We've got a deal" is an admission "otherwise in court" within the

language of ORS 78.3190(4).[2] Although the majority discusses this point, it fails to reach a conclusion and cites no contrary authority. *See* majority opinion n 6, 70 Or App at 492. The majority asserts, however, that defendant's statement is not, as a matter of law, an admission that a contract was made for sale of a stated quantity of described securities at a defined or stated price. *See* ORS 78.3190(4). In his deposition defendant referred to the written contract that his lawyers prepared that sets forth the price and the quantity of stock to be sold. He described the items in that document to which Nelson had objected, stated "I didn't think they were substantive" and also stated his desire to reach agreement. He stated that the parties had agreed on certain of the items and listed these items on exhibit 10, that they also listed the unresolved items on exhibit 10 and that he then said, "We've got a deal." Although defendant did not admit in so many words "We've got a contract for sale of 102 shares of Rico for a price of $950,000," his admission, in the context in which he made it, raised a genuine issue of material fact as to whether that was what he meant.

The majority disagrees with *Gruen Industries, Inc. v. Biller,* 608 F2d 274 (7th Cir 1979), but it is in point. In discussing a similar section of the Wisconsin Uniform Commerical Code the court stated:

> "[A]n admission under section 408.319(4) need not expressly acknowledge the existence of a contract, nor need it describe all of its terms. *Dangerfield v. Markel,* 222 N.W.2d 373 (N.D. 1974) (applying the statute of frauds for sales of goods, section 2-201(3)(b) of the UCC). The admission need only describe conduct or circumstances from which the trier of fact can infer a contract. *Packwood Elevator Co. v. Heisdorffer,* 260 N.W.2d 543, 546 (Iowa 1977). Whether the defendants' statements admit the existence of a contract is a question of fact. *Quad County Grain, Inc. v. Poe,* 202 N.W.2d 118, 120 (Iowa 1972). Thus, summary judgment should not be granted if there is a genuine issue whether the statements admit the existence of a contract. * * *" 608 F2d at 278. (Footnote omitted.)

---

[2]*See URSA Farmers Cooperative Co. v. Trent,* 58 Ill App 3d 930, 16 Ill Dec 348, 933, 374 NE2d 1123 (1978); *Cohn v. Fisher,* 118 NJ Super 286, 287 A2d 222, 227 (1972); *see also Morey, Administratrix v. Redifer et al,* 204 Or 194, 214, 264 P2d 418, 282 P2d 1062 (1955); *Haines v. Pellet,* 62 Or App 428, 431, 660 P2d 1074 (1983).

The issue under ORS 78.3190(4) is not whether defendant's admission makes the documents enforceable as a written contract. The writing that Eastern initialed did not state, as defendant did, that "We've got a deal." The issue also is not whether plaintiffs and defendant entered into a contract for the sale of the securities. The issue is only whether defendant's statement, when considered in context, raised a genuine issue of material fact—that is, whether defendant admitted that there was a contract for the sale of 102 shares of Rico stock for a price of $950,000—sufficient to avoid the Statute of Frauds under ORS 78.3190(4). I believe that it did. The court erred in granting summary judgment to defendant.